## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**BRANDON HENRY, ET AL.**                    **CIVIL ACTION**

**VERSUS**                                   **NO. 2:20-02995-WBV-JVM**
                                             **c/w 20-2997-WBV-JVM**
                                             **c/w 20-2998-WBV-JVM**

**MAXUM INDEMNITY COMPANY , ET AL.    SECTION: D (1)**

### ORDER and REASONS[1]

Before the Court is Capitol Specialty Insurance Corporation's Motion for Summary Judgment and Other Relief.[2]  Both the Plaintiffs and the Nations Defendants oppose the Motion,[3] and Capitol Specialty Insurance Corporation has filed a Reply brief in response to each Opposition brief.[4]

After careful consideration of the parties' memoranda and the applicable law, the Motion is **GRANTED** and Plaintiffs' claims against Capitol Specialty Insurance Corporation are **DISMISSED WITH PREJUDICE**.

### I.    FACTUAL AND PROCEDURAL BACKGROUND[5]

The Plaintiffs in this consolidated case allege that their BP Subsistence Claims were denied due to the actions and inactions of Howard L. Nations, APC (the "Nations Firm"), The Nicks Law Firm, LLC, Rueb & Motta, APLC, Joseph A. Motta, Attorney at Law, APLC, The Rueb Law Firm, APLC, Howard L. Nations, Cindy L. Nations,

---

[1] Unless otherwise indicated, all of the citations to the record in this Order refer to documents filed in the master file of this consolidated matter, 20-cv-2995.
[2] R. Doc. 316.
[3] R. Docs. 401 & 409.  The Nations Defendants include Howard L. Nations, APC, Howard L. Nations, and Cindy L. Nations.  R. Doc. 409 at p. 1.
[4] R. Docs. 426 & 428.
[5] The factual background of this case was extensively detailed in several orders previously issued by this Court (*See,* R. Docs. 223 & 226) and, for the sake of brevity, will not be repeated here.

Shantrell Nicks, Gregory D. Rueb, and Joseph A. Motta (collectively, the "Attorney-Defendants"), including their rushed and confusing intake process, their submission of unreasonable and inconsistent claimant data on each plaintiff's claim form and sworn statement, and that the Attorney-Defendants intentionally deceived each plaintiff regarding the factual reasons for their particular claim denial.[6] Plaintiffs sued the Attorney-Defendants, along with their professional liability insurers, Maxum Indemnity Company ("Maxum"), QBE Insurance Corporation, Landmark American Insurance Company, and Capitol Specialty Insurance Corporation ("CapSpecialty").[7]

In the instant Motion, CapSpecialty asserts that Maxum issued a professional liability policy to the Nations Firm that provided coverage from January 25, 2019 to January 25, 2020 (the "Maxum policy"), and that, thereafter, CapSpecialty issued two professional liability policies to the Nations Firm that provided coverage from January 25, 2020 to January 25, 2021 (the "first CapSpecialty policy") and from January 25, 2021 to January 25, 2022 (the "second CapSpecialty policy").[8] CapSpecialty claims that the Maxum and CapSpecialty policies are all "claims made and reported" policies, meaning that coverage is only triggered if a "Claim" has been both first made against the Nations Firm and reported to the insurer during the policy period.[9]

---

[6] R. Doc. 1-1 at ¶ 17; R. Doc. 1-1 at ¶ 17 in Civ. A. No. 20-2997, *Charles Billiot, Jr., et al. v. Maxum Indem. Co., et al.* (the "*Billiot* matter"); R. Doc. 1-1 at ¶ 17 in Civ. A. No. 20-2998, *Gary Pierce v. Maxum Indem. Co., et al.* (the "*Pierce* matter").
[7] R. Doc. 139 at ¶ 2.
[8] R. Doc. 316-1 at pp. 2-3.
[9] *Id.* at p. 3.

Although the three state court cases that gave rise to this consolidated matter were filed in July 2020,[10] during the first CapSpecialty policy period, CapSpecialty asserts that Plaintiffs' claims against the Nations Defendants are not covered under the policy because a "Claim" was first made against the Nations Defendants regarding the same or related "Wrongful Acts," as those terms are defined in the CapSpecialty policies, when the Nations Defendants were served with the related suit, Civ. A. No. 19-10356, *Deborah Gaudet, et al. v. Howard Nations, APLC, et al.*, (the "*Gaudet* matter"), on or about May 17, 2019, which would have been during the Maxum policy coverage.[11]   CapSpecialty claims that the *Gaudet* matter involves identical professional liability claims against the Attorney-Defendants based upon their alleged failure to file BP Subsistence Claims on behalf of the plaintiffs in that case.   Indeed, CapSpecialty contends that the only distinction between the cases is that the four insurers that issued primary or excess professional liability policies to the Nations Firm are named as direct action defendants in the current *Henry* lawsuit.[12]   CapSpecialty asserts that the Nations Firm promptly notified Maxum of the *Gaudet* matter prior to the inception of the first CapSpecialty policy, and that the Nations Firm should have reasonably foreseen that the "Wrongful Acts" at issue in the *Gaudet* matter might become the basis for additional claims.[13]   Thus, CapSpecialty argues that its first policy (the "first CapSpecialty policy") provides no coverage for Plaintiffs' claims against the Nations Defendants because they are

---

[10] *See,* R. Doc. 1-1; R. Doc. 1-1 in the *Billiot* matter; R. Doc. 1-1 in the *Pierce* matter.
[11] R. Doc. 316-1 at pp. 2-5 & 14-23.  *See,* R. Doc. 9 in the *Gaudet* matter.
[12] R. Doc. 316-1 at p. 2.
[13] *Id*. at pp. 4 & 14-16.

deemed to be claims that were first made against the Nations Defendants when they were served with a copy of the *Gaudet* matter in May 2019, prior to the inception date of the first CapSpecialty policy.  For the same reasons, and out of an abundance of caution, CapSpecialty asserts that Plaintiffs' claims are not covered under the second CapSpecialty policy, which provided coverage from January 25, 2021 to January 25, 2022.[14]   CapSpecialty further asserts that Endorsement No. 3 of the first CapSpecialty policy bars coverage for Plaintiffs' claims because it excludes coverage for any BP Subsistence Claims that arise out of or are based on the *Gaudet* matter or any claim that arises out of a Texas state bar complaint filed by Jerald P. Block, counsel for the plaintiffs in the *Gaudet* and *Henry* matters, against the Nations Firm.[15]

Plaintiffs oppose the Motion, asserting that their claims are separate and distinct from the claims in the *Gaudet* matter and, as such, do not involve the same or related "Wrongful Acts."[16]  Plaintiffs point out that they have alleged that their BP Subsistence Claims were denied during the post-review process, while the *Gaudet* plaintiffs allege that their BP Subsistence Claims never reached the review stage.[17] Plaintiffs claim that CapSpecialty's position "flaunt[s]" this Court's Order denying consolidation of the *Henry* and *Gaudet* matters because the Court held that the claims of the *Gaudet* and *Henry* plaintiffs are not interconnected or intertwined in such a

---

[14] *Id*. at pp. 4 & 25.
[15] *Id*. at pp. 4 & 23-25.
[16] R. Doc. 401 at pp. 4-5.
[17] *Id.*

way to support consolidation.[18]   Although not a model of clarity, Plaintiffs seem to assert that Endorsement No. 3 in the first CapSpecialty policy does not exclude coverage for claims brought by Jerald Block because the disciplinary complaint he filed against the Nations Firm only concerned the *Gaudet* plaintiffs.[19]   Finally, Plaintiffs claim that CapSpecialty's argument that there is no coverage under its second policy is "inscrutable, confusing, and overbroad," and that, "Capitol Specialty's statement about occurrences during the policy period makes no sense in that the policy is a claims made – not an occurrence policy."[20]   As such, Plaintiffs argue that CapSpecialty's Motion for Summary Judgment should be denied.

The Nations Defendants also oppose the Motion, asserting that the alleged wrongful acts at issue in this case do not arise from, nor are they related to, those at issue in the *Gaudet* matter and are not related, so there is a genuine issue of material fact as to whether the first CapSpecialty policy provides coverage.[21]   The Nations Defendants contend that the terms "related" and "related series of facts," set forth in CapSpecialty's policies, are ambiguous and that, "the court should construe the policy in the way most favorable to the insured and define the terms solely in terms of causation."[22]   Under that theory, the Nations Defendants posit that the *Henry* and *Gaudet* claims are not related because Plaintiffs' claims in this matter were not caused by the *Gaudet* plaintiffs' claims, the facts giving rise to the *Gaudet* plaintiffs'

---

[18] *Id*. at pp. 5-6 (*quoting* R. Doc. 226 at p. 11) (internal quotation marks omitted).
[19] R. Doc. 401 at pp. 18-19.
[20] *Id*. at pp. 20-21.
[21] R. Doc. 409.
[22] *Id*. at pp. 5-6.

claims did not give rise to Plaintiffs' claims, and the alleged acts of malpractice are "completely different" in the two cases.[23]  The Nations Defendants also assert that the Fifth Circuit has held that "related" means having a logical or causal connection, and that there's no logical or causal connection between the *Gaudet* and the *Henry* claims.[24]  Relying upon out-of-Circuit cases, the Nations Defendants then claim that the issue of relatedness is a mixed question of law and fact and that the claims in *Gaudet* and *Henry* are not related because they involve different plaintiffs, different attorney-defendants, and different alleged wrongful acts.[25]  The Nations Defendants argue that because the *Gaudet* and *Henry* claims are not related, there is a genuine issue of material fact regarding coverage under the first CapSpecialty policy, so CapSpecialty's Motion should be denied.

In response to Plaintiffs' Opposition brief, CapSpecialty asserts that Plaintiffs did not present any evidence or controvert its assertions regarding the many examples of common material facts and identical allegations of wrongdoing in the *Henry* and *Gaudet* matters.[26]  CapSpecialty claims that Plaintiffs fail to explain why the stage of review reached with the Deepwater Horizon Economic Claims Center ("DHECC") in each case warrants disregarding the identical facts and allegations that establish that the *Henry* and *Gaudet* claims involve "Related Claims" under the first CapSpecialty policy.[27]  CapSpecialty also points out that Plaintiffs failed to

---

[23] *Id.* at p. 6.
[24] *Id.* at p. 8 (citing *North American Specialty Ins. Co. v. Royal Surplus Lines Ins. Co.*, 541 F.3d 552, 557 (5th Cir. 2008); *Lexington Ins. Co. v. St. Bernard Par. Gov't*, 548 Fed.Appx. 176, 179-80 (5th Cir. 2013)).
[25] R. Doc. 409 at pp. 8-13.
[26] R. Doc. 426 at p. 1.
[27] *Id.* at pp. 1-2.

distinguish this case from the Fifth Circuit's recent decision in *Turner v. Cincinnati Ins. Co.*, which establishes that the common facts and allegations in the *Gaudet* and *Henry* matters are sufficient to constitute "Related Wrongful Acts" under CapSpecialty's policies.[28]   CapSpecialty further asserts that the cases involve "Related Wrongful Acts" because the plaintiffs in *Henry* and *Gaudet* rely upon the same expert witness, Benjamin Cooper, who opined that some of the same alleged acts and omissions by the Attorney-Defendants resulted in the denial of their BP Subsistence Claims.[29]   CapSpecialty argues that this Court's ruling regarding consolidation has no bearing on whether the *Henry* and *Gaudet* claims are related,[30] and maintains that Endorsement No. 3 in the first CapSpecialty policy bars coverage in this case.[31]   Finally, as to coverage under its second policy, CapSpecialty points out that Plaintiffs merely state their confusion at the typographical error made in CapSpecialty's Motion regarding the inception date of the second policy, rather than substantively opposing CapSpecialty's argument that there is no coverage under the policy.

In response to the Nations Defendants' Opposition brief, CapSpecialty maintains that the undisputed facts show that the *Gaudet* and *Henry* claims involve and arise from the same "Wrongful Acts" or "Related Wrongful Acts" and, therefore, constitute "Related Claims" under the first CapSpecialty policy.[32]   CapSpecialty

---

[28] *Id.* at p. 2 (citing *Turner*, 9 F.4th 300, 316 (5th Cir. 2021)).
[29] R. Doc. 426 at pp. 4-5 (*citing* R. Doc. 426-3).
[30] R. Doc. 426 at pp. 5-7.
[31] *Id.* at pp. 7-8.
[32] R. Doc. 428.

asserts that the "Wrongful Acts" and "Related Claims" provisions in its policies are not exclusions to coverage, but rather conditions precedent to coverage that the Nations Defendants have failed to carry their burden of proving.[33]   CapSpecialty argues that its provisions are clear and unambiguous and that the Nations Defendants ignored two Fifth Circuit cases in baselessly asserting that the "related" language is ambiguous.[34]   CapSpecialty asserts that the *Gaudet* and *Henry* claims are related because the plaintiffs in both cases allege that their injury arose from the same "Wrongful Act" – the Attorney-Defendants' acceptance of over 14,000 BP clients in the short time before the claim-filing deadline despite not having adequate resources to do so, which resulted in the mishandling and denial of the plaintiffs' BP Subsistence Claims.[35]   As in its other Reply brief, CapSpecialty points out that the plaintiffs in each case have relied upon an identical opinion from the same expert, Benjamin Cooper, who opined that the same acts of the Attorney-Defendants constituted breaches of their fiduciary duties that caused the plaintiffs in each case to lose their BP Subsistence Claims.[36]   Because the Nations Defendants have failed to dispute CapSpecialty's assertion that the *Henry* and *Gaudet* plaintiffs allege many of the same facts, circumstances, and events such that their claims involve "Related Wrongful Acts," CapSpecialty maintains that it is entitled to summary judgment.[37]

---

[33] *Id*. at p. 2.
[34] *Id*. at pp. 2-4 (citing *ADI Worldlink, LLC v. RSUI Indemn. Co.*, 932 F.3d 369, 370 (5th Cir. 2019); *Turner v. Cincinnati Ins. Co.*, 9 F.4th 300 (5th Cir. 2021)).
[35] R. Doc. 428 at p. 5.
[36] *Id*. at pp. 5-6 (*citing* R. Doc. 428-3 at ¶ 33 & R. Doc. 428-4).
[37] R. Doc. 428 at pp. 7-8.

## II.    LEGAL STANDARD

"A federal court sitting in diversity follows the choice of law rules of the state in which it sits."[38]  "Under the Louisiana choice-of-law regime, the law of the state where the insurance contract was issued and executed generally governs the interpretation of that contract."[39]  While not addressed by any of the other parties, CapSpecialty mentions in a footnote that, "the CapSpecialty Policies were issued and delivered to the Nations Firm in Texas."[40]  Turning to the applicable law, CapSpecialty asserts that the relevant rules and principles for interpreting insurance contracts under Texas and Louisiana law are the same or similar, and that it is not necessary to undertake a choice of law analysis in this case.[41]  In contrast, and without explanation, the Nations Defendants apply Louisiana law to the issue of coverage.[42]

As CapSpecialty correctly points out, the Court need not conduct a choice of law analysis because Louisiana and Texas apply similar rules when interpreting insurance contracts.[43]  As such, the Court will apply Louisiana law to the CapSpecialty policies.  Under Louisiana law, an insurance policy is a contract between the parties that should be construed using the general rules of contract

---

[38] *Sorrels Steel Co. v. Great Sw. Corp.*, 906 F.2d 158, 167 (5th Cir. 1990), *opinion amended on denial of reh'g*, 914 F.2d 695 (5th Cir. 1990) (citing *FMC Fin. Corp. v. Murphree*, 632 F.2d 413, 418 (5th Cir. 1980)).

[39] *Woodfield v. Bowman*, 193 F.3d 354, 360 (5th Cir. 1999).

[40] R. Doc. 316-1 at p. 17, n.73.

[41] *Id*. at p. 11.

[42] R. Doc. 409 at pp. 4-5.

[43] *See, Century Surety Company v. Seidel*, 893 F.3d 328, 332 (5th Cir. 2018); *Canutillo Indep. Sch. Dist. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa*, 99 F.3d 695, 700-01 (5th Cir. 1996); *Sims v. Mulhearn Funeral Home, Inc.*, 2007-0054 (La. 5/22/07), 956 So.2d 583, 588-89.

interpretation.[44]  According to those rules, this Court is responsible for determining the common intent of the parties, which begins with an examination of the words of the insurance contract itself.[45]  "In ascertaining the common intent, words and phrases in an insurance policy are to be construed using their plain, ordinary and generally prevailing meaning, unless the words have acquired a technical meaning, in which case the words must be ascribed their technical meaning."[46]

Further, "An insurance contract is to be construed as a whole and each provision in the contract must be interpreted in light of the other provisions.  One provision of the contract should not be construed separately at the expense of disregarding other provisions."[47]  The Louisiana Supreme Court has cautioned against interpreting an insurance policy in an unreasonable or strained manner, "so as to enlarge or to restrict its provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion."[48]  "When the words of an insurance contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent and courts must enforce the contract as written."[49]  According to the Louisiana Supreme Court, "The rules of contractual interpretation simply do not authorize a perversion of the words or the exercise of inventive powers to create an ambiguity where none exists or the making

---

[44] *Arceneaux v. Amstar Corp.*, 2015-0588, p. 12 (La. 9/7/16), 200 So.3d 277, 286 (quoting *Sims*, 2007-0054 at p. 7, 956 So.2d at 588-89) (internal quotation marks omitted).
[45] *Arceneaux*, 2015-0588 at p. 12, 200 So.3d at 289 (citing *Sims*, *supra*).
[46] *Sims*, 2007-0054 at p. 8, 956 So.2d at 589 (citing authority).
[47] *Id.* (citing authority).
[48] *Id.* (citing authority).
[49] *Id.* (*citing* La. Civ. Code art. 2046; *Hill v. Shelter Mut. Ins. Co.*, 05-1783 (La. 7/10/06), 935 So.2d 691, 694; *Peterson v. Schimek*, 98-1712, pp. 4-5 (La. 3/2/99), 729 So.2d 1024, 1028).

of a new contract when the terms express with sufficient clarity the parties' intent."[50] Nonetheless, if an ambiguity remains after applying the general rules of contract interpretation to an insurance contract, the ambiguous contractual provision is generally construed against the insurer and in favor of coverage.[51]  This strict construction principle only applies, however, if the ambiguous policy provision is susceptible to two or more reasonable interpretations.[52] The determination regarding whether a contract is clear or ambiguous is a question of law.[53]

## III.   ANALYSIS

The question before the Court is a narrow one – whether a "Claim" was first made against the Nations Defendants regarding the wrongful acts at issue in the *Henry* case when the underlying state court petitions were filed in July 2020, which was during the first CapSpecialty policy, or when the Nations Defendants were served with the *Gaudet* matter on May 17, 2019, which was before the inception of the first, or any, CapSpecialty policy.  The first CapSpecialty policy, which provided professional liability insurance to the Nations Firm from January 25, 2020 to January 25, 2021, contains a Declarations page that specifically states that:

> **THIS POLICY PROVIDES COVERAGE ON A CLAIMS MADE AND REPORTED BASIS AND APPLIES ONLY TO CLAIMS FIRST MADE AGAINST THE INSURED DURING THE POLICY PERIOD, OR ANY APPLICABLE EXTENDED REPORTING PERIOD, AND REPORTED TO US IN ACCORDANCE WITH PART VI.A.1. OF THE POLICY.   THE POLICY DOES NOT**

---

[50] *Sims*, 2007-0054 at p. 9, 956 So.2d at 589 (citing *Edwards v. Daugherty*, 03-2103, at p.12 (La. 10/1/04), 883 So.2d 932, 941; *Succession of Fannaly v. Lafayette Ins. Co.*, 2001-1355, at p. 4 (La. 1/15/02), 805 So.2d 1134, 1138; *Peterson*, 98-1712 at p. 5, 729 So.2d at 1029).

[51] *Sims*, 2007-0054 at p. 9, 956 So.2d at 589-90 (*citing* La. Civ. Code art. 2056; *Succession of Fannaly*, 01-1355 at p. 4, 805 So.2d at 1138; *Peterson*, 98-1712 at p. 5, 729 So.2d at 1029.

[52] *Sims*, 2007-0054 at p. 9, 956 So.2d at 590 (citing authority).

[53] *Id.* (citing authority).

**COVER CLAIMS ARISING OUT OF WRONGFUL ACTS THAT OCCUR PRIOR TO THE RETROACTIVE DATE OF THE POLICY OR AFTER THE EXPIRATION DATE OF THE POLICY.**[54]

The parties agree that the first CapSpecialty policy is a claims made and reported policy, which means that coverage is triggered only if a claim is first made against the Nations Firm and reported to CapSpecialty during the policy period.[55] The first CapSpecialty policy defines "Claim" as including "any written notice or written demand for monetary relief or Legal Services;" "any civil proceeding in a court of law;" and "any notice of any suit."[56] The policy also defines "Wrongful Acts" to include "any actual or alleged act, error, or omission committed by an Insured solely in the rendering or failure to render Legal Services."[57]

The parties disagree regarding whether the "Wrongful Acts" that gave rise to the *Henry* litigation are the same or related to the "Wrongful Acts" that gave rise to the *Gaudet* matter and, therefore, should be considered a single "Claim" that was first made at the time the earliest "Claim" was made against the Nations Defendants. Under the "**CONDITIONS**" section of the first CapSpecialty policy, there is a subsection entitled, "RELATED **CLAIMS** AND RELATED **WRONGFUL ACTS**," which states the following:

> 1. Related **Claims**
> All **Claims** based on, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving the same **Wrongful Act** or related **Wrongful Acts** shall be considered a single **Claim** to have been made at the time the earliest such **Claim** was made.

---

[54] R. Doc. 316-7 at p. 4 (emphasis in original); *See, Id.* at p. 5.
[55] R. Doc. 316-1 at p. 3; R. Doc. 401 at pp. 2 & 20-21; R. Doc. 409 at p. 1.
[56] R. Doc. 316-7 at p. 11.
[57] *Id.* at p. 13.

2. <u>Related **Wrongful Acts**</u>
> All **Wrongful Acts** based on, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving the same or related facts, circumstances, situations, transactions or events or the same or related series of facts, circumstances, situations, transactions or events shall be considered related **Wrongful Acts** and will be treated under the **Policy** as one **Wrongful Act** and deemed to have occurred on the date of the first of the **Wrongful Acts**.[58]

Relying exclusively on non-Circuit authority, the Nations Defendants assert that this provision is ambiguous.[59]   As CapSpecialty points out, however, the Nations Defendants offer no explanation as to how or why this provision of the policy is ambiguous.[60]   Instead, the Nations Defendants seem to suggest that the term "related" is ambiguous because it "has not been defined in this context by Louisiana courts" and because non-Louisiana courts have recognized a broad meaning of "related" in the insurance policy context.[61]   The Court, however, agrees with CapSpecialty that the Nations Defendants are attempting to create an ambiguity where none exists.

The Court finds no ambiguity in the policy language.  The language is clear that any claims made against the insured (the Nations Firm) that "in any way" involve the same or related wrongful acts regarding the rendering of legal services are deemed to be a single claim made against the Nations Firm at the time the earlier claim was made.  Likewise, all alleged wrongful acts committed by the Nations Firm in rendering legal services that arise out of or "in any way" involve the same or related

---

[58] *Id.* at p. 9 (emphasis in original).
[59] R. Doc. 409 at pp. 4-8.
[60] *Id.* at pp. 4-6.
[61] *Id.* at pp. 4-5 (citing authority).

facts, circumstances, transactions, or events are considered to be related wrongful acts and are treated under the policy as one wrongful act that is deemed to have occurred on the date the first wrongful act occurred. The Nations Defendants have failed to show that the first CapSpecialty policy is ambiguous or that any provision is subject to more than one reasonable interpretation.

Further, as CapSpecialty points out, the Fifth Circuit considered an identical policy provision in *Turner v. Cincinnati Insurance Company* and found no ambiguity.[62] The insurance policy in *Turner* defined a "wrongful act" as "any actual or alleged error, misstatement, misleading statement, act, omission, neglect or breach of duty committed, attempted or allegedly committed or attempted," and that multiple acts constitute "interrelated wrongful acts" if they "have as a common nexus any fact, circumstance, situation, event, transaction or series of facts, circumstances, situations, events, or transactions."[63] The policy further provided that, "all 'claims' based upon or arising out of the same 'wrongful act' or any 'interrelated wrongful acts' shall be considered a single 'claim,'" and that, "A claim is considered 'first made' at the moment 'notice of the earliest "claim" arising out of such "wrongful act" or "interrelated wrongful acts" is received in writing by [ATI] or by [Cincinnati], whichever comes first.'"[64] The Fifth Circuit in *Turner* affirmed the district court's determination that two separate lawsuits regarding failed trade schools in Texas were based on at least one common "wrongful act" or "interrelated wrongful act" and,

---

[62] 9 F.4th 300, 316-17 (5th Cir. 2021).
[63] *Id*. at 304, 314 & 316 (internal quotation marks omitted).
[64] *Id*.

therefore, constituted a single claim under the policy.[65]  Specifically, the Fifth Circuit

held that:

> The Plaintiffs' arguments as to how the two lawsuits were different does
> not overcome the clear similarities between them both.  The virtually
> identical petitions alleged that "ATI intentionally create[d] and
> maintain[ed] a high pressure sales culture that constantly pushe[d]
> admissions representatives and managers to increase enrollment
> through aggressive and misleading sales techniques and tactics."  The
> ATI entities' role in creating and maintaining this "high pressure sales
> culture," however small that role might have been, is a fact common to
> both lawsuits and integral to the claims presented in both.[66]

Neither the Plaintiffs nor the Nations Defendants address, or attempt to distinguish,

the *Turner* decision.

In an earlier case, *ADI WorldLink, LLC v. RSUI Indemn. Co.*, the Fifth Circuit

considered a similar provision in a directors and officers liability insurance policy,

which provided as follows:

> All Claims based on, arising out of, directly or indirectly resulting from,
> in consequence of, or in any way involving the same or related facts,
> circumstances, situations, transactions or events, or the same or related
> series of facts, circumstances, situations, transactions or events, shall
> be deemed to be a single Claim for all purposes under this policy, ... and
> shall be deemed first made when the earliest of such Claims is first
> made, regardless of whether such date is before or during the Policy
> Period.[67]

Without skipping a beat, the Fifth Circuit held that, "The purpose of this provision

appears obvious.  An initial claim is made; the insured gives notice of the claim; if in

later policy years new claims are made that are related in the relevant ways to the

---

[65] *Id*. at 316-17.
[66] *Id*.
[67] 932 F.3d 369, 370 (5th Cir. 2019).

first one, their handling continues consistently under that first policy."[68]   In *ADI Worldlink, LLC*, the defendant insurance company denied coverage based upon the foregoing "interrelatedness provision," claiming that all of the plaintiff's claims were a single claim controlled by an earlier policy and that the plaintiff had failed to give timely notice of the earlier claim.[69]   The district court granted the insurance company's motion for summary judgment and the Fifth Circuit affirmed.[70]

A review of the allegations in the *Henry* and *Gaudet* matter confirms that the alleged wrongful acts of the Nations Defendants in each case are based upon the same or related facts, circumstances, and events, such that the claims involve related "Wrongful Acts" and should be considered a single claim that was made against the Nations Defendants when the earlier claim was made.  In the *Henry* matter, Plaintiffs allege in the Second Amended Complaint that the Attorney-Defendants, including the Nations Defendants, formed a joint venture in April 2015 to solicit and engage BP Subsistence clients and hosted meetings at Louisiana venues, through which they engaged more than 14,000 BP Subsistence clients in the nearly six weeks before the June 8, 2015 claim-filing deadline.[71]   Plaintiffs allege that the Attorney-Defendants "staffed their client engagement facilities with untrained, non-attorney field representatives," and that, "Each Plaintiff experienced the same or similar contact with Defendants, through representatives, regarding their BP Subsistence Claim."[72]

---

[68] *Id.*
[69] *Id.* at 370-71 & 373-75.
[70] *Id.*
[71] R. Doc. 139 at ¶ 15.
[72] *Id.* at ¶¶ 16 & 17.

Specifically, each Plaintiff visited one of the Louisiana meeting locations to hire counsel to file their BP Subsistence Claim, filled-out an intake form, signed a contingency fee contract, and subsequently (and unknowingly) received a DHECC Incompleteness Notice, Denial Notice, FWA Notice, or Appeal Denial, which the Attorney-Defendants unilaterally responded to without first communicating with Plaintiffs.[73]

Plaintiffs allege that the Attorney-Defendants submitted amended claim forms that were false and incorrect, and that their BP Subsistence Claims "were denied due to Defendants' actions and inactions, including their rushed and confusing intake process, unreasonable and inconsistent claimant data submitted on each Plaintiff's claim forms and sworn statements, as well as Defendants' inexcusable lack of communication . . . ."[74]  Plaintiffs assert that:

> Defendants, individually and through their joint venture, intentionally misrepresented and fraudulently concealed the fact that the Plaintiffs' BP Subsistence Claims were denied because of defects in the Plaintiffs' claims strictly caused by the Defendants – including by Defendants' neglect and lack of appropriate legal advice to their clients in the initial claim intake process, and subsequently, by the Defendants' manipulation of claims data in Plaintiffs' claim forms and sworn statements.[75]

Notedly, the *Henry* plaintiffs also reference the *Gaudet* matter in their Second Amended Complaint, asserting that they were excluded from the proposed class in *Gaudet* because the plaintiffs in that case allege that their BP Subsistence Claims "were either never considered or were denied by DHECC due to Defendants' breaches

---

[73] *Id*. at ¶ 17.
[74] *Id*. at ¶ 17(h).
[75] *Id*. at ¶ 38.

of conduct, neglect, breach of contract, and legal malpractice."[76]  In that Amended
Complaint, Plaintiffs explain that although they "were similarly denied relief due to
Defendants' misconduct, Plaintiffs in this litigation—unlike those in the pending
*Gaudet* class action—have claims that require individualized proof."[77]  The *Henry*
Plaintiffs state that, unlike in the *Gaudet* matter, their claims were fully submitted
and reached the review stage.[78]

The Third Amended Class Action Complaint filed in the *Gaudet* matter
likewise alleges that the Attorney-Defendants, including the Nations Defendants,
formed a joint venture to prosecute BP Subsistence Claims, held meetings to solicit
clients and file claims on their behalf, and "handled at least 14,500 claimants in
Louisiana, Mississippi, Alabama, and Florida."[79]  The *Gaudet* plaintiffs allege that
the Attorney-Defendants' "assembly-line process, to solicit and engage as many
clients as possible by misrepresenting to the claimants that their claims would be
properly and timely filed by the deadline, was clearly intended to provide an economic
benefit to the Defendants and a concomitant detriment to their clients."[80]  The *Gaudet*
plaintiffs further allege that, "Each Defendant had full knowledge, in July 2015, that
thousands of joint venture claims had not been properly and/or timely filed," and,
"intentionally misrepresented and fraudulently concealed from their clients that
their respective Subsistence Claims had either not been filed by the deadline or

---

[76] *Id*. at ¶ 6.
[77] *Id*.
[78] *Id*.
[79] *See*, R. Doc. 236 at pp. 2-3 in the *Gaudet* matter.
[80] *Id*. at ¶ 54.

lacked documentation required by the BP Settlement Agreement in order to be compensated for their losses (despite such documentation being readily available to Defendants through the DHECC portal)."[81]   The *Gaudet* plaintiffs assert that, "As a direct and proximate result of Defendants' deceptive tactics, actual fraud, intentional misrepresentations, and concealment of material information, the Plaintiff Class members lost the opportunity to be compensated for their economic losses."[82]

The Court agrees with CapSpecialty that the wrongful acts of the Nations Defendants alleged in the *Henry* and *Gaudet* matters involve the same or related facts, circumstances, transactions or events, namely the Attorney-Defendants' solicitation and mishandling of the filing of the plaintiffs' BP Subsistence Claims.[83] The plaintiffs in each case allege that they lost the opportunity to be compensated for their subsistence losses because the Attorney-Defendants accepted over 14,000 BP Subsistence Claimants right before the June 8, 2015 deadline for filing claims, despite not having adequate resources to do so, which resulted in the mishandling and ultimate denial of their BP Subsistence Claims.[84]   Plaintiffs and the Nations Defendants attempt to distinguish the claims asserted by the *Gaudet* plaintiffs on the basis that the *Gaudet* plaintiffs' BP Subsistence Claims were either never filed or not properly filed by the Attorney-Defendants, and the *Henry* plaintiffs' BP Subsistence Claims were filed and subsequently denied during the post-review process.  The Court rejects that argument as meritless, since it ignores the clear language in the *Henry*

---

[81] *Id*. at ¶ 61.
[82] *Id*. at ¶ 67.
[83] *See*, R. Doc. 316-1 at p. 19; R. Doc. 428 at p. 5.
[84] *See*, R. Doc. 428 at p. 5.

Plaintiffs' Second Amended Complaint that their BP Subsistence Claims were denied due to the Attorney-Defendants' actions and inactions at the time their BP Subsistence Claims were filed *and* in the post-review process.[85]

Accordingly, the Court finds that the *Henry* and *Gaudet* matters involve related "Claims" against the Nations Defendants that are based upon related "Wrongful Acts," as those terms are defined in the first CapSpecialty policy and, therefore, they are considered a single "Claim" that is deemed to have been made at the time the earliest "Claim" was made. CapSpecialty asserts, and no other party contests, that the earlier "Claim" was made against the Nations Defendants when they were served with the *Gaudet* matter on May 17, 2019.[86] As such, the *Henry* Plaintiffs' "Claim" was first made against the Nations Defendants in May 2019, before the inception of the first CapSpecialty policy on January 25, 2020.

The evidence submitted by CapSpecialty further supports the Court's conclusion. Specifically, two affidavits from Benjamin P. Cooper, an expert retained by the plaintiffs in the *Henry* and *Gaudet* matters, which contain overlapping opinions regarding causation and the wrongful acts of the Attorney-Defendants prior to filing the BP Subsistence Claims.[87] In each affidavit, Cooper opines that, "Defendants breached their fiduciary duties of loyalty and fidelity to Plaintiffs by knowingly undertaking the representation of thousands of other clients, which

---

[85] R. Doc. 139 at ¶¶ 16, 17(h), 23-25, & 38.
[86] *See*, R. Doc. 316-1 at pp. 3-4, 21, 22, & 23. *See*, R. Doc. 9 in the *Gaudet* matter.
[87] *See*, R. Docs. 428-3 & 428-4.

materially limited their ability to faithfully and competently represent these Plaintiffs."[88]  Cooper also opines in each affidavit that:

> 33.  In this particular case, however, the Defendants knew or should have known that they would not be able to submit timely and valid claims for the thousands of clients whom they undertook to represent concurrently, given the time constraints.  There, in this unique case, despite the absence of any adverse or contradictory interests from a legal or strategic point of view, the Defendants knowingly and predictably accepted concurrent representation which, as a practical matter, was likely to and in fact did materially affect the ability of Defendants to represent the interests of their other clients, which, in my opinion, constituted a breach of loyalty and fidelity – in addition to a breach of general competence and care.

> 34.  Indeed, it could be reasonably inferred that Defendants – contrary to their fiduciary duties of loyalty and fidelity – placed their own interests before the interests of the Plaintiffs and other clients.  In one sense, of course, the interests of Plaintiffs and defendants are aligned, in that the Defendants stood to earn a fee on the Plaintiffs' claims if and only if they were timely submitted and pursued.  At the same time, however, it could be inferred that Defendants were seeking to maximize their own collective fee interest by signing up as many clients as possible, all the while knowing that the interests of thousands of their clients, (including these Plaintiffs), would fall by the wayside.[89]

Cooper further opines that, "As a direct result of Defendants' breaches of their fiduciary duties, Plaintiffs lost their claims," and that, "Without sufficient resources, Defendants had a blatant conflict of interest: each new client that they took on impaired their ability to competently and diligently represent the clients that they already were representing.  Yet they continued to take on more clients.  This is an issue that impacted all of the Plaintiffs in this case."[90]

---

[88] R. Doc. 428-3 at p. 3, ¶ 7(b); R. Doc. 428-4 at p. 4, ¶ c.
[89] R. Doc. 428-3 at ¶¶ 33-34; R. Doc. 428-4 at pp. 19-20.
[90] R. Doc. 428-3 at ¶ 46; R. Doc. 428-4 at p. 20.

As CapSpecialty aptly points out, the plaintiffs in *Gaudet* and *Henry* are relying upon the same expert opinion that the same alleged acts and omissions by the Attorney-Defendants, including the Nations Defendants, constitutes breaches of fiduciary duties that resulted in the denial of the plaintiffs' BP Subsistence Claims in each case.[91]  The Court agrees with CapSpecialty that Cooper's identical opinions regarding the alleged breaches of fiduciary duties further establishes that "Claims" made against the Nations Defendants in *Gaudet* and *Henry* involve the same or related "Wrongful Acts" and, under the first CapSpecialty policy, are considered a single "Claim" that was made when the earliest claim was made.  Again, the earlier claim was made when the Nations Defendants were served with a copy of the *Gaudet* matter on May 17, 2019,[92] which was prior to the inception of the first CapSpecialty policy on January 25, 2020.  The Plaintiffs and the Nations Defendants have failed to show that there exists a genuine issue of material fact regarding coverage under the first CapSpecialty policy.  The Court reaches the same conclusion regarding the second CapSpecialty policy, which has a coverage period of January 25, 2021 to January 25, 2022.

To the extent that Plaintiffs assert the claims in the *Henry* and *Gaudet* matters are not "Related Claims" under the first CapSpecialty policy based upon the Court's March 18, 2022 Order and Reasons denying consolidation of the *Henry* and *Gaudet* matters, the Court agrees with CapSpecialty that the consolidation order is irrelevant to the issue of coverage under the policy.  As evidenced by the language quoted in

---

[91] *See*, R. Doc. 426 at p. 4.
[92] *See*, R. Doc. 9 in the *Gaudet* matter.

Plaintiffs' Opposition brief, the Court denied consolidation, in part, because "the claims of the *Gaudet* plaintiffs and the *Henry* plaintiffs are not 'interconnected' or 'intertwined' as they were in the *Pride Centric Resources, Inc. v. LaPorte* case, which supported consolidation in that matter."[93]   The Court also noted that there was a risk of jury confusion because of separate claims pending in each case.  Curiously, Plaintiffs ignore the following language in the Court's Order:

> Three separate lawsuits were filed regarding the alleged actions and inactions of certain attorneys and law firms while representing the interests of the plaintiffs in the Deepwater Horizon Economic and Property Damage Settlement Program (the "BP Settlement Program"), in which members of the Economic and Property Damages Settlement Class ("BP Class") made claims to be compensated for their subsistence losses caused by the BP oil spill.[94]

The Court's determination that the claims asserted in the *Gaudet* and *Henry* matters were not sufficiently interconnected to support consolidation has no bearing on the Court's interpretation of the policy language in the first CapSpecialty policy or the Court's determination regarding whether the cases involve "Related Claims" under the policy.  Plaintiffs have failed to direct the Court to any legal authority suggesting otherwise.[95]  Accordingly, the Court finds that CapSpecialty is entitled to summary judgment and Plaintiffs' claims are dismissed with prejudice.  To the extent CapSpecialty requests, in passing, that Plaintiffs' claims be dismissed with prejudice "at Plaintiffs' costs,"[96] that request is denied.

---

[93] R. Doc. 226 at p. 11 (citation omitted).  *See*, R. Doc. 401 at pp. 5-6 (*quoting* R. Doc. 226 at p. 11).
[94] R. Doc. 226 at pp. 1-2 (citations omitted).
[95] Because the Court has determined that the claims asserted by the *Henry* plaintiffs against the Nations Defendants are not covered under the first or second CapSpecialty policies, the Court need not consider CapSpecialty's argument that coverage is also barred under Endorsement No. 3 of the first CapSpecialty policy.
[96] R. Doc. 316 at p. 2; R. Doc. 316-1 at p. 25; R. Doc. 426 at p. 11; R. Doc. 428 at p. 10.

IV.     **CONCLUSION**

For the reasons set forth above, **IT IS HEREBY ORDERED** that Capitol Specialty Insurance Corporation's Motion for Summary Judgment and Other Relief[97] is **GRANTED** and Plaintiffs' claims against CapSpecialty are **DISMISSED WITH PREJUDICE.**

New Orleans, Louisiana, November 8, 2022.

**WENDY B. VITTER**
**United States District Judge**

---

[97] R. Doc. 316.