## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

**BRANDON HENRY, ET AL.**                    **CIVIL ACTION**

**VERSUS**                                   **NO. 2:20-02995-WBV-JVM**
                                             **c/w 20-2997-WBV-JVM**
                                             **c/w 20-2998-WBV-JVM**

**MAXUM INDEMNITY CO, ET AL.**               **SECTION: D (1)**

### ORDER and REASONS

Before the Court is Landmark American Insurance Company's Motion for Summary Judgment and Other Relief.[1]  Both the Plaintiffs and the Nations Defendants oppose the Motion,[2] and  Landmark American Insurance Company has filed a Reply brief in response to each Opposition brief.[3]

After careful consideration of the parties' memoranda and the applicable law, the Motion is **GRANTED** and Plaintiffs' claims against Landmark American Insurance Company are **DISMISSED WITH PREJUDICE**.

### I.    FACTUAL AND PROCEDURAL BACKGROUND[4]

The Plaintiffs in this consolidated case allege that their BP Subsistence Claims were denied due to the actions and inactions of Howard L. Nations, APC (the "Nations Firm"), The Nicks Law Firm, LLC, Rueb & Motta, APLC, Joseph A. Motta, Attorney at Law, APLC, The Rueb Law Firm, APLC, Howard L. Nations, Cindy L. Nations,

---

[1] R. Doc. 313.
[2] R. Docs. 401 & 410.  The "Nations Defendants" include Howard L. Nations, APC, Howard L. Nations, and Cindy L. Nations.
[3] R. Docs. 427 & 429.
[4] The factual background of this case was extensively detailed in several orders previously issued by this Court (*See,* R. Docs. 223 & 226) and, for the sake of brevity, will not be repeated here.

Shantrell Nicks, Gregory D. Rueb, and Joseph A. Motta (collectively, the "Attorney-Defendants"), including their rushed and confusing intake process, their submission of unreasonable and inconsistent claimant data on each plaintiff's claim form and sworn statement, and that the Attorney-Defendants intentionally deceived each plaintiff regarding the factual reasons for their particular claim denial.[5]  Plaintiffs sued the Attorney-Defendants, along with their professional liability insurers, Maxum Indemnity Company ("Maxum"), QBE Insurance Corporation, Landmark American Insurance Company ("Landmark"), and Capitol Specialty Insurance Corporation ("CapSpecialty").[6]

In the instant Motion, Landmark asserts that it is entitled to summary judgment and costs because neither of the two excess professional liability insurance policies that it issued to the Nations Firm provide coverage for Plaintiffs' claims in this case.[7]  Landmark explains that Maxum issued a primary policy of professional liability insurance to the Nations Firm with a policy period of January 25, 2019 to January 25, 2020 (the "Maxum policy"), and CapSpecialty issued a primary policy of professional liability insurance to the Nations Firm with a policy period of January 25, 2020 to January 25, 2021 (the "first CapSpecialty policy").[8]  Landmark asserts that it issued two consecutive excess professional liability insurance policies in favor of the Nations Firm – a policy that provided excess coverage to the Maxum policy (the

---

[5] R. Doc. 1-1 at ¶ 17; R. Doc. 1-1 at ¶ 17 in Civ. A. No. 20-2997, *Charles Billiot, Jr., et al. v. Maxum Indem. Co., et al.* (the "*Billiot* matter"); R. Doc. 1-1 at ¶17 in Civ. A. No. 20-2998, *Gary Pierce v. Maxum Indem. Co., et al.* (the "*Pierce* matter").
[6] R. Doc. 139 at ¶ 2.
[7] R. Doc. 313.
[8] R. Doc. 313-1 at pp. 2-3 (*citing* R. Docs. 313-3 & 313-5).

"first Landmark policy"), and a policy that provided excess coverage to the first CapSpecialty policy (the "second Landmark policy").[9] Landmark explains that its policies are "claims made" policies, under which coverage generally requires that a claim for a wrongful act be first made against the insured and reported to the insurer in writing during the policy period.[10]

Landmark contends that the undisputed material facts and the clear and unambiguous language of its policies establish that the policies provide no coverage for Plaintiffs' claims because both policies have a January 25, 2016 "Retroactive Date," which is defined as the date "on or after which any alleged or actual negligent act, error or omission must have first taken place in order to be considered for coverage under this policy."[11] Landmark asserts that Plaintiffs have alleged that the Nations Defendants' alleged negligent acts, errors, or omissions that gave rise to this litigation occurred on or before the June 8, 2015 deadline for filing BP Subsistence Claims, which is over seven months before the January 25, 2016 Retroactive Date of its policies.[12] Alternatively, Landmark asserts that the second Landmark policy provides no coverage in this case because Plaintiffs' claims were first made against the Nations Defendants, and any alleged "Wrongful Acts" or "related Wrongful Acts"

---

[9] R. Doc. 313-1 at pp. 3-4 (*citing* R. Docs. 313-14 & 313-16).
[10] R. Doc. 313-1 at pp. 15 & 17 (citing *Gorman v. City of Opelousas*, 2013-1734, p.6 (La. 7/1/14), 148 So.3d 888, 893).
[11] R. Doc. 313-1 at p. 4 (*quoting* R. Doc. 313-14 at p. 2 & R. Doc. 313-16 at p. 4) (internal quotation marks omitted).
[12] R. Doc. 313-1 at pp. 4 & 16-21.

of the Nations Defendants occurred, long before the inception of the second Landmark policy on January 25, 2020.[13]

Plaintiffs oppose the Motion, asserting that Landmark failed to prove that its policy exclusions bar coverage in this matter.[14]  Plaintiffs claim that Landmark fails to acknowledge the distinct differences between the claims asserted by Plaintiffs in this case and the claims asserted by the plaintiffs in Civ. A. No. 19-10356-WBV-JVM, *Deborah A. Gaudet, et al. v. Howard L. Nations, APC, et al.* (the "*Gaudet* matter"). Specifically Plaintiffs point out that they allege that their BP Subsistence Claims reached the review stage of the Deepwater Horizon Economic Claims Center ("DHECC") claims process while the *Gaudet* plaintiffs allege that their BP Subsistence Claims were never properly submitted and, therefore, were never reviewed for eligibility by the DHECC.[15]  Plaintiffs point to the Court's March 18, 2022 Order and Reasons denying consolidation of the *Henry* and *Gaudet* matters, wherein the Court held that the claims asserted by the plaintiffs in each case are not interconnected or intertwined.[16]  Plaintiffs further argue that coverage is not barred by the January 25, 2016 Retroactive Date in the Landmark policies because Plaintiffs have alleged in their Second Amended Complaint that the Nations Defendants' acts of malpractice occurred on or after February 2, 2016.[17]  Plaintiffs claim that their

---

[13] *Id.* at pp. 4-5 & 21-22.  The Court notes that Landmark also adopts by reference the arguments made by CapSpecialty in its Motion for Summary Judgment, which was filed on May 27, 2022.  *Id.* at p. 5, n.13 & pp. 21-22.  *See,* R. Doc. 316.
[14] R. Doc. 401 at pp. 3 & 21.
[15] *Id.* at pp. 4-5.
[16] *Id.* at pp. 5-6 (*citing* R. Doc. 226 at p. 11).
[17] R. Doc. 401 at pp. 7-17 (*citing* R. Doc. 105-2 at pp. 11, 15, 17-28, 31, 33, 34, 35, 36, 38, 39, 41, 43, 45, 50, 51-52, 53, 55, & 57-59).

allegations are substantiated by documents contained in the files of the Nations Firm that they obtained during discovery.[18]   Finally, Plaintiffs assert that the Motion should be denied to the extent that Landmark alternatively argues that coverage is excluded under its second policy, since Plaintiffs' claims were first made against Landmark on July 6, 2020, which was during the second Landmark policy.[19]

In response, Landmark asserts that Plaintiffs' Opposition brief ignores the Landmark policy language that specifies that the Retroactive Date is the date on or after which any alleged negligent act or omission "**must have first taken place** in order to be considered for coverage."[20]   Landmark contends that Plaintiffs have consistently argued that the Nations Defendants' alleged acts of malpractice and breaches of fiduciary duties occurred well before the January 25, 2016 Retroactive Date, and that Plaintiffs have simply pointed out in their Opposition brief that additional acts occurred after that date.[21]   Landmark maintains that Plaintiffs' claims are not covered by the second Landmark policy because they are deemed to have been first made against the Nations Firm on May 17, 2019, when the *Gaudet* matter was filed in this Court, and when they were first reported to Maxum on June 18, 2019, both of which occurred prior to the inception of the second Landmark policy.[22]

---

[18] R. Doc. 401 at p. 17 (*citing* R. Doc. 401-1).
[19] R. Doc. 401 at p. 18.
[20] R. Doc. 427 at p. 2 (emphasis added by Landmark).
[21] *Id*. at pp. 2-3 (*citing* R. Doc. 139 at ¶¶ 16, 23, & 38).
[22] R. Doc. 427 at p. 4.

The Nations Defendants also oppose the Motion, agreeing with Plaintiffs that summary judgment is not warranted where, as here, Landmark has failed to show that there is no reasonable interpretation of the insurance policies under which coverage could be afforded.[23] The Nations Defendants point out that the two Landmark policies at issue are claims-made policies, which cover losses made against the insured when a claim is submitted to the insurer in accordance with the policy terms during the period specified in the policy.[24] The Nations Defendants argue that because they are claims-made policies, the determinative factor regarding whether there is coverage is "when the claim was made, not when the negligent acts occurred."[25] The Nations Defendants contend that the Plaintiffs filed their state court lawsuits in July 2020, well within the policy period of the second Landmark policy.[26] The Nations Defendants further assert that, contrary to Landmark's position, Plaintiffs have alleged "a litany" of negligent acts or omissions that occurred after the January 25, 2016 Retroactive Date of Landmark's policies.[27] The Nations Defendants claim that Plaintiffs' Opposition brief illustrates that they have alleged that throughout 2016 and 2017, the Nations Defendants authored and submitted documents without claimants' consent, failed to contact claimants, and failed to prepare claimants for field team visits.[28] Thus, the Nations Defendants argue that Plaintiffs' claims fall within Landmark's insurance policies because their claim "was

---

[23] R. Doc. 410 at p. 2 (citing *Reynolds v. Select Properties, Ltd.*, 93-1480 (La. 4/11/94), 634 So.2d 1180).
[24] R. Doc. 410 at pp. 2-3 (citing *Anderson v. Ichinose*, 98-2157 (La. 9/8/99), 760 So.2d 302).
[25] R. Doc. 410 at p. 3 (citing *Williams v. Bestcomp, Inc.*, 2020-106, p.32 (La. App. 3 Cir. 12/15/21), 333 So.3d 461).
[26] R. Doc. 410 at p. 3.
[27] *Id.*
[28] *Id.* (*citing* R. Doc. 401 at pp. 6-21).

first made against the Nations Defendants during the policy period" and the alleged negligent acts, errors, and omissions occurred after the January 25, 2016 Retroactive Date.[29]  The Nations Defendants further assert that because some of their alleged negligent acts occurred after the January 25, 2016 Retroactive Date, there is at least a possibility of coverage, which obligates Landmark to defend the Nations Defendants in this litigation.[30]  The Nations Defendants also adopt the arguments made in their Opposition brief to CapSpecialty's Motion for Summary Judgment, namely that Plaintiffs' claims are covered under the second Landmark policy because Plaintiffs' claims are neither logically nor causally related to the *Gaudet* plaintiffs' claims and, therefore, should not be deemed "related" under the policies at issue.[31]

In response, Landmark asserts that the January 25, 2016 Retroactive Date in its policies is not a policy exclusion, but a necessary condition precedent for coverage and that the Nations Defendants have the burden of proving that Plaintiffs' claim falls within the policy coverage.[32]  Landmark maintains that the alleged acts and omissions that gave rise to Plaintiffs' claim first occurred before the January 25, 2016 Retroactive Date, a fact that the Nations Defendants do not dispute.[33]  Landmark also maintains that it has no duty to defend the Nations Defendants because they acknowledged, in their Opposition brief, that "**<u>some</u>** of the negligent acts alleged by the *Henry* plaintiffs took place after the retroactive date of the policy."[34]  Landmark

---

[29] R. Doc. 410 at p. 4.
[30] R. Doc. 410 at p. 4.
[31] *Id*. at pp. 4-5.
[32] R. Doc. 429 at pp. 1-2
[33] *Id*. at pp. 2-4.
[34] *Id*. at p. 4 (*quoting* R. Doc. 410 at p. 4) (internal quotation marks omitted) (emphasis added by Landmark).

claims that this statement "undermines the premise" of the Nations Defendants' argument.  Finally, Landmark maintains that there is no coverage under the second Landmark policy because Plaintiffs' claim is deemed to have been first made against the Nations Firm and reported to Maxum in May and June 2019, before the inception date of the policy.[35]

## II.    LEGAL STANDARD

"A federal court sitting in diversity follows the choice of law rules of the state in which it sits."[36]  "Under the Louisiana choice-of-law regime, the law of the state where the insurance contract was issued and executed generally governs the interpretation of that contract."[37]  None of the parties in this case have provided information regarding where the Landmark insurance policies were issued or executed.  In its Motion, Landmark asserts that, "CapSpecialty respectfully submits that the relevant rules for interpreting insurance contracts under Texas and Louisiana law are the same or similar and that it is not necessary to undertake a choice of law analysis here."[38]  Although Landmark refers to itself as "CapSpecialty" in this statement, it appears to be a typographical error caused by an inartful copy-and-paste job from CapSpecialty's Motion for Summary Judgment.[39]  Without explanation, Landmark proceeds to address the interpretation of insurance policies

---

[35] R. Doc. 429 at p. 5.

[36] *Sorrels Steel Co. v. Great Sw. Corp.*, 906 F.2d 158, 167 (5th Cir. 1990), *opinion amended on denial of reh'g*, 914 F.2d 695 (5th Cir. 1990) (citing *FMC Fin. Corp. v. Murphree*, 632 F.2d 413, 418 (5th Cir. 1980)).

[37] *Woodfield v. Bowman*, 193 F.3d 354, 360 (5th Cir. 1999).

[38] R. Doc. 313-1 at p. 14 (citation omitted).

[39] *See*, R. Doc. 316-1 at p. 11 ("CapSpecialty respectfully submits that the relevant rules and principles for interpreting insurance contracts under Texas and Louisiana law are the same or similar and that it is not necessary to undertake a choice of law analysis here.").

under Louisiana law.[40]  The Nations Defendants similarly, and without explanation, also apply Louisiana law in their analysis of policy coverage in their Opposition brief.[41]

Because the parties do not dispute the law applicable to the issue of policy interpretation, the Court will apply Louisiana law to the Landmark insurance policies.  Under Louisiana law, an insurance policy is a contract between the parties that should be construed using the general rules of contract interpretation.[42] According to those rules, this Court is responsible for determining the common intent of the parties, which begins with an examination of the words of the insurance contract itself.[43]  "In ascertaining the common intent, words and phrases in an insurance policy are to be construed using their plain, ordinary and generally prevailing meaning, unless the words have acquired a technical meaning, in which case the words must be ascribed their technical meaning."[44]

Further, "An insurance contract is to be construed as a whole and each provision in the contract must be interpreted in light of the other provisions.  One provision of the contract should not be construed separately at the expense of disregarding other provisions."[45]  The Louisiana Supreme Court has cautioned against interpreting an insurance policy in an unreasonable or strained manner, "so

---

[40] R. Doc. 313-1 at pp. 14-15.
[41] R. Doc. 410 at p. 2.
[42] *Arceneaux v. Amstar Corp.*, 2015-0588, p. 12 (La. 9/7/16), 200 So.3d 277, 286 (quoting *Sims v. Mulhearn Funeral Home, Inc.*, 2007-0054, p. 7 (La. 5/22/07), 956 So.2d 583, 588-89 (internal quotation marks omitted).
[43] *Arceneaux*, 2015-0588 at p. 12, 200 So.3d at 289 (citing *Sims*, *supra*).
[44] *Sims*, 2007-0054 at p. 8, 956 So.2d at 589 (citing authority).
[45] *Id.* (citing authority).

as to enlarge or to restrict its provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion."[46]  "When the words of an insurance contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent and courts must enforce the contract as written."[47]  According to the Louisiana Supreme Court, "The rules of contractual interpretation simply do not authorize a perversion of the words or the exercise of inventive powers to create an ambiguity where none exists or the making of a new contract when the terms express with sufficient clarity the parties' intent."[48] Nonetheless, if an ambiguity remains after applying the general rules of contract interpretation to an insurance contract, the ambiguous contractual provision is generally construed against the insurer and in favor of coverage.[49]  This strict construction principle only applies, however, if the ambiguous policy provision is susceptible to two or more reasonable interpretations.[50]  The determination regarding whether a contract is clear or ambiguous is a question of law.[51]

## III.   ANALYSIS

The question before the Court is a narrow one – whether Plaintiffs have alleged that the negligent acts or omissions of the Nations Defendants that form the basis of

---

[46] *Id.* (citing authority).

[47] *Id.* (*citing* La. Civ. Code art. 2046; *Hill v. Shelter Mut. Ins. Co.*, 05-1783 (La. 7/10/06), 935 So.2d 691, 694; *Peterson v. Schimek*, 98-1712, pp. 4-5 (La. 3/2/99), 729 So.2d 1024, 1028).

[48] *Sims*, 2007-0054 at p. 9, 956 So.2d at 589 (citing *Edwards v. Daugherty*, 03-2103, at p. 12 (La. 10/1/04), 883 So.2d 932, 941; *Succession of Fannaly v. Lafayette Ins. Co.*, 2001-1355, at p. 4 (La. 1/15/02), 805 So.2d 1134, 1138; *Peterson*, 98-1712 at p. 5, 729 So.2d at 1029).

[49] *Sims*, 2007-0054 at p. 9, 956 So.2d at 589-90 (*citing* La. Civ. Code art. 2056; *Succession of Fannaly*, 01-1355 at p. 4, 805 So.2d at 1138; *Peterson*, 98-1712 at p. 5, 729 So.2d at 1029).

[50] *Sims*, 2007-0054 at p. 9, 956 So.2d at 590 (citing authority).

[51] *Id.* (citing authority).

their malpractice claim first occurred before or after the January 25, 2016 Retroactive Date in the two Landmark insurance policies.  The first Landmark policy is an excess professional liability policy that was issued to the Nations Firm and provided coverage in excess to the Maxum policy for the policy period of January 25, 2019 to January 25, 2020.[52]  The first Landmark policy is a "claims made" policy, as it specifically provides that, "**UNLESS OTHERWISE PROVIDED BY THE UNDERLYING INSURANCE, THIS POLICY APPLIES TO CLAIMS FIRST MADE AND REPORTED DURING THE POLICY PERIOD SET FORTH IN THE DECLARATIONS.**"[53]  The first Landmark policy further provides that, "This policy shall provide coverage in accordance with the same terms, conditions and limitations of the **Followed Policy**, or any more restrictive provisions of the **Underlying Excess Policies**, except as otherwise set forth in this policy."[54]  The first Landmark policy defines the "**Followed Policy**" as the Maxum policy of professional liability coverage, and the "**Underlying Excess Policies**" are defined as "all policies scheduled in the Schedule of Underlying Excess Policy(ies) in the Excess Liability Policy Supplemental Declarations."[55]  The first Landmark policy further defines "**Retroactive Date**" as "the date stated in Item 4. of the Declarations on or after which any alleged or actual negligent act, error or omission must have first taken place in order to be considered for coverage under this policy."[56]  According

---

[52] R. Doc. 313-14.
[53] *Id*. at p. 4 (emphasis in original).
[54] *Id*. (emphasis in original).
[55] *Id*. at pp. 2 & 4 (emphasis in original).
[56] *Id*. at p. 4 (emphasis in original).

to the Declarations page of the policy, the "Retroactive Date" is January 25, 2016.[57] The second Landmark policy is identical to the first policy, except that it provides excess professional liability insurance to the Nations Firm in excess to the first CapSpecialty policy for the policy period of January 25, 2020 to January 25, 2021.[58]

Landmark argues that in order for its policies to provide coverage for Plaintiffs' "Claim" against the Nations Defendants in this case, the alleged "Wrongful Act" that gave rise to that "Claim" must have first occurred on or after the January 25, 2016 Retroactive Date.[59]  Neither Plaintiffs nor the Nations Defendants dispute Landmark's interpretation of its policies or the meaning of the term "Retroactive Date" contained therein.  Thus, there is no argument before the Court that the Landmark policies are ambiguous.  Instead, the parties dispute whether the alleged acts and omissions of the Nations Defendants that gave rise to Plaintiffs' claim first occurred before or after the January 25, 2016 Retroactive Date.  Landmark asserts that Plaintiffs have "unambiguously" alleged that the negligent acts or omissions that gave rise to their "Claim" against the Nations Defendants first occurred before the January 25, 2016 Retroactive Date.[60]  In contrast, the Plaintiffs and the Nations Defendants argue that Plaintiffs have alleged that the Nations Defendants committed negligent acts after the January 25, 2016 Retroactive Date.[61]

---

[57] *Id*. at p. 2.
[58] R. Doc. 313-16 at p. 2.
[59] R. Doc. 313-1 at p. 17.
[60] R. Doc. 313-1 at pp. 4, 6, 17-18, & 20-21.
[61] *See,* R. Doc. 401 at pp. 6-17; R. Doc. 410 at pp. 2-4.

The Court agrees with Landmark that Plaintiffs have unambiguously alleged that their BP Subsistence Claims were denied due to the negligent acts or omissions of the Attorney-Defendants, including the Nations Defendants, both at the time of filing their claims and after the filing of their claims.[62]  The Court notes that the deadline for filing BP Subsistence Claims with the DHECC was June 8, 2015.[63]  Thus, the record supports that Plaintiffs have alleged that some of the negligent acts or omissions of the Nations Firm that gave rise to this litigation occurred before the January 25, 2016 Retroactive Date in the Landmark policies.  As the Court recently explained in its November 8, 2022 Order and Reasons granting CapSpecialty's Motion for Summary Judgment,[64] Plaintiffs allege in their Second Amended Complaint that the Attorney-Defendants, which include the Nations Defendants, formed a joint venture in April 2015 to solicit and engage BP Subsistence clients and hosted meetings at Louisiana venues, through which they engaged more than 14,000 BP Subsistence clients in the nearly six weeks before the June 8, 2015 claim-filing deadline.[65]  Plaintiffs allege that the Attorney-Defendants "staffed their client engagement facilities with untrained, non-attorney field representatives," and that, "Each Plaintiff experienced the same or similar contact with Defendants, through representatives, regarding their BP Subsistence Claim."[66] Specifically, each Plaintiff visited one of the Louisiana meeting locations to hire counsel to file their BP

---

[62] *See*, R. Doc. 313-1 at p. 6 (*citing* R. Doc. 139 at ¶¶ 26-31).
[63] R. Doc. 139 at ¶ 14.
[64] R. Doc. 523.
[65] R. Doc. 139 at ¶ 15.
[66] *Id*. at ¶¶ 16 & 17.

Subsistence Claim, filled-out an intake form, signed a contingency fee contract, and subsequently (and unknowingly) received a DHECC Incompleteness Notice, Denial Notice, FWA Notice, or Appeal Denial, which the Attorney-Defendants unilaterally responded to without first communicating with Plaintiffs.[67]

Plaintiffs further allege that the Attorney-Defendants submitted amended claim forms that were false and incorrect, and that their BP Subsistence Claims "were denied due to Defendants' actions and inactions, including their rushed and confusing *intake process*, unreasonable and inconsistent claimant data submitted on each Plaintiff's claim forms and sworn statements, as well as Defendants' inexcusable lack of communication . . . ."[68]   According to Plaintiffs, "Defendants' incompetence, negligence, intentional deceit, and selfish motives caused them to manipulate the claimant data with inaccurate and fraudulent claim information.  Defendants then signed each Plaintiffs' BP Subsistence Claim Form without requiring a signature by Plaintiffs herein."[69]   Plaintiffs allege that, "when given the opportunity to cure inaccurate claim information for each Plaintiff, Defendants failed to inform Plaintiffs of the status of their particular BP Subsistence Claim or to communicate with the Plaintiffs in order to cure Plaintiffs' claim amounts."[70]   Instead, "without the Claimants' consent or knowledge, Defendants supplemented Plaintiffs' BP

---

[67] *Id.* at ¶ 17.
[68] *Id.* at ¶ 17(h) (emphasis added).
[69] *Id.* at ¶ 23.
[70] *Id.* at ¶ 24.

Subsistence Claim by substituting claimant-provided information with amounts unilaterally modified and fabricated by Defendants."[71]

Plaintiffs then allege that, "The Defendants' joint venture manipulated claimant data on their clients' claim forms and sworn statements, which was then submitted to DHECC," and that, "The manipulation included far-fetched and unreasonable increases of the amount and weights of species, inconsistencies regarding the type and amount of species each Plaintiff had harvested, and other activities and misstatements by Defendants to DHECC, all of which was done without the knowledge or consent of the Plaintiffs."[72]  Plaintiffs allege that, "Defendants filed requests for appeals with the DHECC for numerous Plaintiffs named herein," and that in those filings, the Attorney-Defendants "admit and acknowledge" that each "Claimant did not intentionally provide false information on his initial Subsistence Claim Form.  It was simply a mistake due to the ___rushed manner of filing and___ ___confusion regarding the intake form___."[73]  Plaintiffs allege that, "Plainly put, each Plaintiff's BP Subsistence Claim was denied as a result of Defendants' neglect, breach of conduct and fidelity to their clients, fraud, and incompetent representation."[74] Plaintiffs specifically allege that:

> Defendants, individually and through their joint venture, intentionally misrepresented and fraudulently concealed the fact that the Plaintiffs' BP Subsistence Claims were denied because of defects in the Plaintiffs' claims strictly caused by the Defendants – including by Defendants' neglect and lack of appropriate legal advice to their clients *in the initial claim intake process*, *and subsequently*, by the Defendants'

---

[71] *Id.*
[72] *Id.* at ¶ 25.
[73] *Id.* at ¶ 27 (emphasis added by Plaintiffs).
[74] *Id.* at ¶ 29.

manipulation of claims data in Plaintiffs' claim forms and sworn statements.[75]

Plaintiffs assert that, "As a direct and proximate result of Defendants' deceptive actions and inactions, fraud, intentional misrepresentations, and concealment of material information, each Plaintiff suffered an economic loss."[76]

Based on the allegations in the Second Amended Complaint, Plaintiffs have clearly and repeatedly alleged that the negligent acts or omissions of the Nations Defendants that gave rise to Plaintiffs' "Claim" under the Landmark policies first occurred before the June 8, 2015 claim-filing deadline.  As such, Plaintiffs have alleged that the negligent acts that gave rise to their "Claim" occurred over seven months *before* the January 25, 2016 Retroactive Date in the two Landmark policies. While the Plaintiffs and the Nations Defendants point out that Plaintiffs have alleged that the Nations Defendants committed *additional* negligent acts after the January 25, 2016 Retroactive Date, by submitting amended claim forms, those additional negligent acts do not negate the fact that Plaintiffs have alleged that some of the negligent acts first occurred long before the January 25, 2016 Retroactive Date.

The Court finds further support for this conclusion in the evidence submitted by Landmark, specifically the June 8, 2021 Expert Report of Allen M. Gressett.[77] According to the report, Plaintiffs retained Gressett "to provide an expert report regarding my specific knowledge and experience pertaining to the filing process for subsistence claims, including the management of clients' claims," and, "to contrast

---

[75] *Id*. at ¶ 38 (emphasis added).
[76] *Id*. at ¶ 41.
[77] R. Doc. 313-17.

our firm's handling, management, and filing of subsistence claims with those of
Defendants and to render opinions on Defendants' handling, management, and filing
of subsistence claims based on the facts discovered up to this point in the litigation."[78]
In his report, Gressett opines that, "Defendants' decision to continue accepting new
BP subsistence clients up to and including the June 8, 2015 deadline greatly
contributed to their inability to properly file their clients' claims."[79]  Gressett asserts
that, "Defendants' have admitted repeatedly in Appeal Memos to making 'mistakes'
during this faulty and 'rushed' intake process," and that, "These 'mistakes' directly
caused denials of claims that could have been prevented with appropriate pre-filing
review."[80]  Gressett further opines that, "These errors occurred during the intake
process, and a simple examination of client intake forms would have caught the
inaccuracies on Defendants' confusing intake form.  This failure of review was a root
cause of many denied claims for these Plaintiffs."[81]  Thus, Gressett has opined that
certain alleged actions and omissions of the Attorney-Defendants that first occurred
*before* the June 8, 2015 claim-filing deadline gave rise to Plaintiffs' claim against the
Nations Defendants.

    The Court also finds support for its conclusion that Plaintiffs' claim against the
Nations Defendants is not covered under the Landmark policies in the June 9, 2021
Expert Report of Benjamin P. Cooper, who was retained by the Plaintiffs "to conduct
a preliminary analysis of Plaintiffs' claims in this case, including an explanation of

---

[78] *Id*. at p. 2.
[79] *Id*. at pp. 7-8.
[80] *Id*. at p. 8.
[81] *Id*.

applicable Mississippi law as it applies to the facts gathered to date."[82]  In his report,

Cooper opines that, "Defendants committed negligence-based malpractice by failing

to exercise the skill, knowledge and diligence of a reasonably prudent lawyer in

numerous ways.  Of particular note, Defendants *submitted* incomplete, inaccurate,

and inconsistent information to DHECC.  As a direct result of these breaches of the

duty of care, Plaintiffs' claims were denied by DHECC."[83]  Cooper further opines that,

"Defendants breached their fiduciary duties of loyalty and fidelity to the Plaintiffs by

knowingly undertaking the representation of thousands of other clients, which

materially limited their ability to faithfully and competently represent these

Plaintiffs."[84]  Cooper asserts that:

> In this particular case, however, the Defendants knew or should have
> known that they would not be able to submit successful claims for the
> thousands of clients whom they undertook to represent concurrently,
> given the time constraints.  Therefore, in this unique case, despite the
> absence of any adverse or contradictory interests from a legal or
> strategic point of view, the Defendants knowingly and predictably
> accepted concurrent representation which, as a practical matter, was
> likely to and in fact did materially affect the ability of Defendants to
> represent the interests of their other clients, which, in my opinion,
> constituted a breach of loyalty and fidelity – in addition to a breach of
> general competence and care.[85]

Cooper further opines that, "As a direct result of Defendants' breaches of their

fiduciary duties, Plaintiffs lost their claims."[86]  Thus, like Gressett, Cooper has opined

that the negligent acts and omissions of the Nations Defendants that gave rise to

---

[82] R. Doc. 313-18 at p. 1.
[83] *Id.* at p. 3 (emphasis added).
[84] *Id.* at p. 4.
[85] *Id.* at pp. 19-20.
[86] *Id.* at p. 20.

Plaintiffs' claim first occurred before the January 25, 2016 Retroactive Date in the Landmark policies.

The Landmark policies clearly define the "**Retroactive Date**" of each policy as the date "on or after which any alleged or actual negligent act, error or omission must have first taken place in order to be considered for coverage under this policy."[87] Both policies define the "Retroactive Date" as January 25, 2016.[88] Based upon the allegations in Plaintiffs' Second Amended Complaint, and the opinions contained in the expert reports of Gressett and Cooper, the Court finds that the Landmark policies do not provide coverage for Plaintiffs' claim against the Nations Defendants. To the extent Plaintiffs assert that Landmark's "summary judgment statements flaunt this Court's Order and Reasons" denying consolidation of the *Henry* and *Gaudet* matters,[89] the Court disagrees and finds that the consolidation order is irrelevant to the issue of coverage under the Landmark policies. As evidenced by the language quoted in Plaintiffs' Opposition brief, the Court denied consolidation, in part, because "the claims of the *Gaudet* plaintiffs and the *Henry* plaintiffs are not 'interconnected' or 'intertwined' as they were in the *Pride Centric Resources, Inc. v. LaPorte* case, which supported consolidation in that matter."[90]  The Court also noted that there was a risk of jury confusion because of separate claims pending in each case. Curiously, Plaintiffs ignore the following language in the Court's consolidation Order:

> Three separate lawsuits were filed regarding the alleged actions and
> inactions of certain attorneys and law firms while representing the

---

[87] R. Doc. 313-14 at p. 4 (emphasis added); R. Doc. 313-16 at p. 4 (emphasis added).
[88] R. Doc. 313-14 at p. 2; R. Doc. 313-16 at p. 2.
[89] R. Doc. 401 at pp. 5-6 (*citing* R. Doc. 226).
[90] R. Doc. 226 at p. 11 (citation omitted).  *See*, R. Doc. 401 at pp. 5-6 (*quoting* R. Doc. 226 at p. 11).

interests of the plaintiffs in the Deepwater Horizon Economic and Property Damage Settlement Program (the "BP Settlement Program"), in which members of the Economic and Property Damages Settlement Class ("BP Class") made claims to be compensated for their subsistence losses caused by the BP oil spill.[91]

The Court's determination that the claims asserted in the *Gaudet* and *Henry* matters were not sufficiently interconnected to support consolidation in this legal matter has no bearing on the Court's interpretation of the Landmark policies, or the Court's determination regarding whether Plaintiffs have alleged that the Nations Defendants' negligent acts and omissions first occurred on or before the January 25, 2016 Retroactive Date of the policies. Plaintiffs have failed to direct the Court to any legal authority suggesting otherwise.[92] Accordingly, the Court finds that Landmark is entitled to summary judgment and Plaintiffs' claims are dismissed with prejudice. To the extent Landmark requests, in passing, that Plaintiffs' claims be dismissed with prejudice "at the *Henry* Plaintiffs' sole cost,"[93] that request is denied.

## IV. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that Landmark American Insurance Company's Motion for Summary Judgment and Other Relief.[94]

---

[91] R. Doc. 226 at pp. 1-2 (citations omitted).

[92] Because the Court has determined that the claim asserted by the *Henry* plaintiffs against the Nations Defendants is not covered under the first or second Landmark policy, the Court need not consider Landmark's alternative argument that there is no coverage under the second Landmark policy because Plaintiffs' claims were first made against the Nations Defendants prior to the inception of the second policy on January 25, 2020. *See*, R. Doc. 313-1 at pp. 21-22.

[93] R. Doc. 313 at p. 2; R. Doc. 313-1 at p. 22; R. Doc. 427 at p. 5; R. Doc. 429 at p. 6.

[94] R. Doc. 313.

is **GRANTED** and Plaintiffs' claims against Landmark are **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana, November 8, 2022.

**WENDY B. VITTER**
**United States District Judge**