UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| BRANDON HENRY, ET AL., | * | CIVIL ACTION |
| *Plaintiffs* | * | NO.:  20-2995 |
| | * | c/w 20-2997, 20-2998 |
| VERSUS | * | |
| | * | SECTION:  "D" (1) |
| MAXUM INDEMNITY COMPANY, ET AL. | * | |
| | * | JUDGE WENDY B. VITTER |
| *Defendants* | * | |
| | * | MAGISTRATE JUDGE |
| | * | JANIS VAN MEERVELD |

** *APPLIES TO ALL CASES* **

ORDER AND REASONS

Before the Court is the Motion to Enforce Settlement and to Dismiss all Claims with Prejudice. (Rec. Doc. 564). Considering the several writings of the parties' counsel, the Court finds a valid and enforceable settlement agreement. Accordingly and for the following reasons, the Motion to Enforce is GRANTED on the terms laid out herein.

Background

Prior to 2010, the plaintiffs in this litigation caught and harvested seafood from the Louisiana coastal areas to sustain their basic personal and family dietary, economic, and security needs. They claim that following the oil spill caused by the BP Deepwater Horizon explosion on April 20, 2010 (the "BP Oil Spill"), they were unable to continue catching and harvesting fish because of fishing closures. As a result of the BP Oil Spill, litigation proceeded in the United States District Court for the Eastern District of Louisiana with claimants asserting many different kinds of damages, from "subsistence damages" described above, to personal injuries suffered during the cleanup efforts. The litigation settled, and the Economic and Property Damages Settlement Class ("BP Class") was established. The plaintiffs here claim they were entitled to assert their rights to participate in the settlement by filing a claim with the Deepwater Horizon Economic Claims Center

1

("DHECC"). The deadline to file a claim for losses sustained due to the BP Oil Spill fishing closures ("Subsistence Claims") was June 8, 2015.

Howard L. Nations, APC, Howard L. Nations, Cindy L. Nations (the "Nations Defendants"), The Nicks Law Firm, LLC, Shantrell Nicks (the "Nicks Defendants"), Rueb & Motta, APLC, Joseph A. Motta, Attorney at Law, APLC, the Rueb Law Firm, APLC, Gregory D. Rueb, and Joseph A. Motta (the "Rueb & Motta Defendants" and with the Nations Defendants and the Nicks Defendants, the "Law Firm Defendants") allegedly formed a joint venture to solicit and engage clients with Subsistence Claims. The Law Firm Defendants held meetings at numerous locations across the gulf south to recruit thousands of clients. The plaintiffs in this litigation allege that they engaged the Law Firm Defendants pursuant to an Attorney-Client Contract, by which the Law Firm Defendants assumed the obligation to prepare, file, and prosecute each plaintiff's Subsistence Claims.[1]

The plaintiffs in these consolidated lawsuits allege that the Law Firm Defendants negligently and intentionally signed their Subsistence Claims forms without requiring plaintiffs' signatures. Plaintiffs here further allege that when DHECC provided an opportunity to cure inaccurate claim information for each plaintiff, the Law Firm Defendants failed to notify the plaintiffs and instead supplemented the amounts claimed by the plaintiffs with information unilaterally modified and fabricated by the Law Firm Defendants. Plaintiffs allege that these manipulations resulted in unreasonable increases in the amount and weights and species, which resulted in the claims being denied by the BP Settlement Program's Fraud, Waste and Abuse program or the Claims Review and Appeal Process. Plaintiffs allege that but for the Law Firm

---

[1] The form contract listed the purpose of representation as the prosecution of "all claims against all necessary defendants arising out of Event: **BP Deepwater horizon Oil Spill Class Action Settlement for *Subsistence Claims*.**" See Gaudet v. Howard L. Nations, APC, 19-cv-10356, ECF # 1, at 13 (E.D. La. May 13, 2019) (emphasis in original).

Defendants' acts and omissions, they would have received an award from the DHECC. They say that they did not learn until March or April 2019 that their claims had been denied. On July 6, 2020, Plaintiffs filed these lawsuits in state court against the Law Firm Defendants as well as the following insurers of the Nations Defendants: Maxum Indemnity Company, QBE Insurance Corporation, Landmark American Insurance Company, and Allied World Insurance Company. The actions were removed to this Court in November 2020. Allied was voluntarily dismissed in December 2020 and Capital Specialty Insurance Corporation was joined via an amended complaint filed in April 2021. Also in December 2020, the District Court consolidated three nearly identical cases with Henry v. Maxum Indemnity Company, No. 20-cv-2995, as the lead case.

Prior to the filing of this consolidated action known as the Henry case, a separate group of plaintiffs filed a similar lawsuit in this Court on May 13, 2019. Like the Henry plaintiffs, the plaintiffs in the Gaudet litigation alleged that they had retained the Law Firm Defendants to pursue their Subsistence Claims. But the Gaudet plaintiffs allege that the Law Firm Defendants failed to timely file a complete Subsistence Claim with the DHECC on their behalf. They, too, allege that they did not learn that their claims had been denied until they received letters from the Law Firm Defendants in March 2019. The Gaudet plaintiffs named only the Law Firm Defendants—not the Insurers—as defendants. And they purported to file on behalf of a class of similarly situated plaintiffs. Their motion for class certification was denied on July 21, 2021.

The present dispute arises out of settlement negotiations that took place in December 2022 and early 2023. At the time the negotiations began, trial in both Gaudet and Henry was scheduled to begin on January 9, 2023. However, the discussions sought a global settlement of not only Gaudet and Henry, but also similar litigation pending in Mississippi and prosecuted by the same attorneys as are handling the Gaudet and Henry matters. The parties refer to the Mississippi

litigation as the <u>Ackman</u> case. Altogether, there are 148 named plaintiffs.

The undersigned was deeply involved in the settlement negotiations. A joint settlement conference in the <u>Gaudet</u> and <u>Henry</u> cases was held on December 16, 2022, but no settlement was reached. <u>Henry</u>, No. 20-cv-2995, ECF # 552 (E.D. La. Dec. 16, 2022); <u>Gaudet</u>, No. 19-10356, ECF # 484 (E.D. La. Dec. 16, 2022). Thereafter on December 23, 2022, the undersigned issued a mediator's proposal. <u>Henry</u>, No. 20-cv-2995, ECF # 572-2 (E.D. La. May 8, 2023). The proposal included specific amounts for each of the Law Firm Defendants and Insurers to pay. <u>Id.</u> It provided that this settlement pot be divided among all 148 plaintiffs in all three cases, but did not specify a split. <u>Id.</u> It provided that the settlement would result in "[f]ull dismissal of all three lawsuits, pending/contemplated 5th Circuit appeal, everything." <u>Id.</u> And it required that "[p]laintiffs obtain signed releases from all clients." <u>Id.</u> As they now readily admit, QBE, Landmark, Cap Specialty, and Plaintiffs agreed to the proposal in writing. The Law Firm Defendants and Maxum (Nations' lead insurer) did not accept the proposal as written.[2] In Maxum's email response, it is clear that the issue was the dollar figure it would agree to pay on behalf of itself and the Nations Defendants. <u>Henry</u>, No. 20-cv-2995, ECF # 572-3 (E.D. La. May 8, 2023). It did list eight contingencies. Of relevance here, it included a requirement that "anyone who qualifies as an insured under the Maxum Policy" be released, that the release "include a no admission of liability provision," that the release include "standard defense and indemnity provisions," and that "[t]here is no actual settlement and no money is transferred . . . unless and until (a) ALL 148 plaintiffs across all the suits execute a mutually agreed upon release. If any one of them backs out, the deal falls apart; and (b) orders of dismissal with prejudice, with each party to bear their own costs are signed by counsel for the Plaintiffs, the insured Defendants, Judge Vitter, and Judge Dotson [in Mississippi]

---

[2] A non-party insurer—described as Markel in the mediator's proposal, declined to contribute anything to settlement and was not included in any further negotiations.

in all three cases." Because of the shortfall in monies needed, the undersigned reported to all counsel via email that unanimous acceptance of the mediator's proposal had not been achieved on December 29, 2022. Henry, No. 20-cv-2995, ECF # 572-4 (E.D. La. May 8, 2023).

The undersigned continued negotiations with the parties. These final negotiations did not include further discussion of the requirement that all 148 plaintiffs execute mutually agreeable releases. And the use of a mandate was not mentioned by anyone. Instead, the negotiations focused on convincing the plaintiffs to accept a lower total dollar figure as a result of a reduced amount to be paid by the Nations Defendants and Maxum as conveyed in Maxum's December 29, 2022, email and convincing plaintiffs to accept a promissory note as payment from the Rueb & Motta Defendants and the Nicks Defendants. Ultimately the undersigned obtained consent from all parties to this modified version of the mediator's proposal on January 2, 2023. On January 4, 2023, counsel for plaintiffs confirmed that all his clients consented to the deal and the undersigned reported this development via an email, stating "we have a deal" and reporting that plaintiffs' counsel would soon circulate a term sheet. Henry, No. 20-cv-2995, ECF # 572-6 (E.D. La. May 8, 2023). Trial was called off and the lawsuits were dismissed without prejudice pursuant to a conditional order of dismissal, with the Court retaining jurisdiction to enforce the compromise agreed upon by the parties.

The term sheet was circulated by plaintiffs' counsel later that day. Henry, No. 20-cv-2995, ECF # 572-7 (E.D. La. May 8, 2023). In addition to listing out the payment terms, the term sheet included the following: (1) plaintiffs' counsel's firm "intends to secure mandates from Plaintiffs allowing Jerald Block to sign any and all releases as mandatary for the plaintiffs" and (2) the defendants would acknowledge that some of the plaintiffs are deceased and for those plaintiffs, "affidavits of death and heirship will identify the correct persons who will sign releases on

decedent's behalf." Id.   Counsel for Maxum responded that "Maxum agrees that the above-captioned cases have been fully and completely settled in principal," but it noted that "until such time as a mutually agreed upon settlement releases are executed and provided by all 148 of [plaintiffs' counsel's] clients, there is in fact no settlement." Henry, No. 20-cv-2995, ECF # 572-8 (E.D. La. May 8, 2023). Maxum's counsel confirmed that it had agreed to pay up to the amount listed in the term sheet after it had the opportunity to perform an accounting of the amount remaining on the policy to confirm that this amount was, indeed, available. Id.

On January 10, 2023, plaintiffs' counsel emailed to check in on the status of the audit "so we can decide whether to move forward and to start working on a mutually agreeable settlement agreement." Henry, No. 20-cv-2995, ECF # 572-10 (E.D. La. May 8, 2023). On February 8, 2023, Maxum circulated its first draft of the settlement agreement. Henry, No. 20-cv-2995, ECF # 572-11 (E.D. La. May 8, 2023). Negotiations over the terms of the release ensued.

Unfortunately, the parties hit an impasse on three points: (1) whether plaintiffs' counsel may use mandates in lieu of his clients personally signing the releases, (2) whether the settlement includes plaintiffs' release of all claims related to Deepwater Horizon—not just the Subsistence Claims, and (3) whether the settlement includes a release of all employees of the Law Firm Defendants. Despite continued negotiations, including status conferences with the undersigned, the issues could not be resolved. The Gaudet and Henry plaintiffs then filed the present Motion to Enforce Settlement. They ask this Court to find that the settlement reached in early January 2023 is binding, that the mandates are valid, and that the settlement encompasses only the allegations of the complaint. They seek an order enforcing the settlement agreement and dismissing plaintiffs' claims with prejudice.

All defendants oppose. Maxum and the Law Firm Defendants now take the position that

no settlement was ever reached:  they say they never agreed to the term sheet circulated by plaintiffs' counsel on January 4 and they insist that there is no written offer and written acceptance. The remaining insurers take a similar position, but assert they remain willing to be bound by the mediators' proposal. All defendants insist that obtaining releases signed by each plaintiff was a condition of any settlement and that the proposed mandates do not satisfy this requirement. They argue that the mandate is deficient because it is not irrevocable, because it purports to make attorneys Jerald Block and Matthew Hymel mandataries but is accepted by the Block Law Firm, and because it does not attach the settlement documents or otherwise offer assurances that each plaintiff understood what he or she was agreeing to. They add that because some of the plaintiffs are now deceased, succession formalities must be complied with and have not been. They submit that if the mandates are invalid, they will be prejudiced because the plaintiffs may be able to refile litigation against them.

Some of the defendants also argue that this Court lacks jurisdiction to enforce the settlement because any settlement was required to include the Ackman litigation—but that lawsuit is pending in another court. Some argue that there can be no settlement because plaintiffs have not agreed to include defense and indemnity provisions, because plaintiffs have not agreed to include all claims arising out of the Deepwater Horizon explosion, and because plaintiffs have not agreed to include a no admission of liability clause.

In reply, plaintiffs insist that there is a binding settlement and argue that the writings here indicate a meeting of the minds. They argue that the mandates are legally sufficient and that, in any event, any problems with their sufficiency will lie with plaintiffs' counsel. They submit that they agreed to include "no admission of liability" language in the release and that they are also willing to include a defense and indemnity provision. They argue further that the release proposed

7

by Maxum includes claims never brought or contemplated by the plaintiffs. And they argue that it is not necessary to mention the employees in the release because this is a legal malpractice and breach of contract action and the employees were not named as defendants and their acts and omissions were clearly performed in the course and scope of their employment. They add that there is no dispute that the settlement is global and that the separate <u>Ackman</u> litigation does not preclude this Court from enforcing the settlement agreement here. Upon enforcement, plaintiffs' counsel submits they will file a motion to dismiss the Mississippi litigation.

Law and Analysis

*1. Law Governing Settlement Agreements*

"A compromise is a contract whereby the parties, through concessions made by one or more of them, settle a dispute or an uncertainty concerning an obligation or other legal relationship." La. Civ. Code art. 3071."Compromises are favored in the law and the burden of proving the invalidity of such an agreement is on the party attacking it." <u>Elder v. Elder & Elder Enterprises, Ltd.</u>, 2006-0703 (La. App. 4 Cir. 1/11/07), 948 So. 2d 348, 350.

A valid compromise must be in a particular form: the Civil Code requires that a compromise "be made in writing or recited in open court." La. Civ. Code art. 3072. As the Fifth Circuit Court of Appeals has observed, the purpose of the writing requirement "is simply to provide objective proof of the acquiescence of the parties to the compromise agreement." <u>Parich v. State Farm Mut. Auto. Ins. Co.</u>, 919 F.2d 906, 915-16 (5th Cir. 1990). The comments to article 3072 acknowledge that electronic writings and electronic signatures satisfy the requirements. La. Civ. Code art. 3072 Revision Comments – 2007 (d); <u>see</u> La. Stat. Ann. § 9:2607(C)-(D). Additionally, the written agreement may be in more than one document. <u>DeSoto v. DeSoto</u>, 96-1079 (La. App. 5 Cir. 4/29/97), 694 So. 2d 1043, 1045 ("When two instruments, read together, constitute a written

compromise agreement outlining the obligations of each party and evidencing the acquiescence therein by both parties, they are an enforceable compromise agreement under La. Civ.Code Art. 3071."). The key to valid compromise "is a meeting of the minds of the parties as to exactly what they intended when the compromise was reached." Feingerts v. State Farm Mut. Auto. Ins. Co., 2012-1598 (La. App. 4 Cir. 6/26/13), 117 So. 3d 1294, 1301 (quoting Elder, 948 So. 2d at 350). Importantly, a compromise may be enforceable even where the written compromise does not encompass every issue between the parties or where it is subject to later formalities. Adm'rs of the Tulane Educ. Fund v. Biomeasure, Inc., No. CIV. A. 08-5096, 2011 WL 692045, at *4 (E.D. La. Feb. 18, 2011); Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co., 98-0193 (La. App. 4 Cir. 9/30/98), 720 So. 2d 372, 374.

"[T]he compromise instrument is governed by the same general rules of construction applicable to contracts." Ortego v. State, Dep't of Transp. & Dev., 96-1322 (La. 2/25/97), 689 So. 2d 1358, 1363. Although the parties' intent is normally determined from the text of the agreement alone, "[w]hen a dispute arises as to the scope of a compromise agreement, extrinsic evidence can be considered to determine exactly what differences the parties intended to settle." Id. at 1363-64.

   *2. Law of Mandate*

The Louisiana Civil Code provides for a contract by which one person—the principal—confers upon another person the authority to transact one or more affairs of the principal. La. Civ. Code art. 2989. In common law jurisdictions, this concept might be referred to as agency or power of attorney. In Louisiana, this type of contract is known as a "mandate," and the agent is the "mandatary." See id. No particular form is required, although "when the law prescribes a certain form for an act, a mandate authorizing the act must be in that form." Id. art. 2993. A principal may "confer on the mandatary general authority to do whatever is appropriate under the circumstances."

9

Id. art. 2994. But express authority is required to "[e]nter into a compromise." Id. art. 2997.

"The principal is bound to perform the contract that the mandatary, acting within the limits of his authority, makes with a third person." Id. art. 3020. If the principal revokes the mandate and fails to "notify third persons with whom the mandatary was authorized to contract," then the principal remains "bound to perform the obligations that the mandatary has undertaken." Id. art. 3028.

The defendants here argue that they cannot blindly accept the mandates as valid. They cite Clampit v. Interstate Dodge, Inc., where a customer sought to enforce a contract for the sale of a pickup truck from a dealership based on the verbal representations of the salesman that they could purchase the truck for $20,000 cash and based on a document titled "Offer to Purchase," which the customer signed at the same time he tendered a check for $20,000. 34,125 (La. App. 2 Cir. 11/15/00), 771 So. 2d 311, 311-13. When the salesman presented the Offer to Purchase and check to the general sales manager, the general sales manager rejected the offer. Id. at 313. The customer insisted they had a deal based on the salesman's quotes, but the general manager insisted that salesmen were not permitted to quote prices. Id. at 314. The Louisiana Second Circuit Court of Appeal held that the dealership was not bound by the contract because the evidence showed that the salesman did not have authority to accept an offer to purchase. R. at 314-15. The court of appeals also rejected the customer's argument that the salesman had apparent authority to bind the dealership, finding that it should have been obvious to the customers that "management approval would eventually be a factor at some point in the sales process," considering that the salesman had stated that he could cut the price for a cash deal "without management approval" and considering that the document the customer signed was clearly titled "Offer to Purchase." Id. at 315. The court of appeals noted that:

> The burden of proving apparent authority is on the party seeking to bind the principal. A third party may not blindly rely on the assertions of an agent, but has a duty to determine, at his peril, whether the agency purportedly granted by the principal permits the proposed act by the agent.

Id.

The Louisiana First Circuit Court of Appeals has cited <u>Clampit</u> for this "blind reliance" rule, although the court did not actually apply it—finding instead that the trial court erred in holding that the alleged mandatary had authority to enter into a lease on behalf of the principal and holding that the matter should proceed to trial. <u>Samuel v. Cmty. Coffee Co.</u>, 2001-2267 (La. App. 1 Cir. 10/2/02), 835 So. 2d 662, 664, <u>writ denied,</u> 2002-2703 (La. 12/19/02), 833 So. 2d 344.

3. *Is the settlement agreement here enforceable?*

This case is troubling. After protracted negotiations, counsel for each party assured the undersigned verbally and/or in writing that a compromise had been reached. At the time, there was no confusion over the settlement terms. They were laid out in the mediator's proposal, with subsequent modifications in the amounts and/or method of payment by Maxum and the Nations Defendants, the Nicks Defendants, and the Rueb & Motta Defendants. Based on representations of counsel for each party, the undersigned announced that settlement had been reached. As plaintiffs point out, no party objected at the time of this announcement or when trial was taken off the calendar and the case dismissed. Indeed, the parties do not now dispute the dollar figures or the use of promissory notes as laid out in the term sheet circulated by plaintiffs' counsel. In fact, despite defendants' disingenuous assertions that they never agreed to settle, the only terms of settlement that are actually in dispute at this time are

(1) whether plaintiffs' counsel's use of mandates to authorize him to sign the releases in lieu of his clients personally signing the releases complies with the parties' agreement,

(2) whether the settlement includes plaintiffs' release of all claims related to Deepwater

Horizon claims even though this lawsuit only alleged malpractice with regard to plaintiffs' Subsistence Claims, and

(3) whether the settlement includes a release of all employees of the Law Firm Defendants, even though none of them were named in this lawsuit and the claims here were for legal malpractice (for which only an attorney—not attorneys' staff—can be liable) and breach of contract (for which only the contracting parties—not employees of the contracting parties—can be liable).[3]

Despite representations made directly to the undersigned by defense counsel, those same attorneys now insist that they never agreed to settle this case. Their position now is that there is no written offer and acceptance. They are correct in only one respect: there is no term sheet signed by all parties and the parties were not able to agree to the language of the release. Nonetheless, the Court finds sufficient evidence in the parties' writings to find an offer and acceptance.

First, there is the Court's written mediator's proposal, which QBE, Landmark, and Cap Specialty admit they accepted in writing. Their dollar figures never changed from that amount. The requirement for dismissal of all three lawsuits and any pending appeals and the requirement of releases signed by 148 plaintiffs remained throughout.

Next, there is the term sheet circulated by the plaintiffs and reflecting the key deal terms (that is, how much and how payments would be made, acknowledging payment was contingent on receipt of executed releases from the plaintiffs, and acknowledging Gaudet, Henry, and Ackman

---

[3] Defendants' opposition memoranda raise several specious issues. They complain plaintiffs will not agree to include a no admission of liability clause in the release. That is false. They complain plaintiffs will not agree to include defense and indemnity provisions. This, too, is false.  In fact, far better than agreeing to have plaintiffs defend and indemnify the defendants, plaintiffs' counsel agreed to do so, to assuage concerns raised by defense counsel about the use of mandates. Defendants' refusal to accept reasonable compromises and all proposed solutions, coupled with defendants' expansion of the settlement to include claims clearly not brought here nor contemplated in any of the negotiations, along with flagrant misrepresentations of positions purportedly taken by plaintiffs' counsel on various terms, cause the Court to wonder if perhaps plaintiffs are right: defendants have buyer's remorse.

were all settled), plus the two additional terms related to deceased plaintiffs and mandates that had never previously been discussed. Maxum accepted the key deal terms in counsel's January 5, 2023, email, acknowledging a "settlement in principal." Counsel for Nations Defendants and Rueb and Motta Defendants confirmed the deal had been reached in an email to the undersigned dated January 4, 2023, thanking the undersigned.[4] Critically, no party voiced any objection to the announced settlement. And in fact, counsel for the defendants, led by counsel for Maxum, proceeded to draft and circulate the release. Henry, No. 20-cv-2995, ECF # 572-11 (E.D. La. May 8, 2023).

While "[g]enerally, a transaction or compromise is a contract to settle a lawsuit and therefore must possess the essential elements of any type of contract to be valid," a valid and enforceable settlement can be found from writings read together, the preparation of a document contemplated by the settlement by the party now contesting the settlement,[5] and/or substantial compliance. Parich, 919 F.2d at 913-18. In Parich, the Fifth Circuit found "the proof of complete acquiescence [in the compromise] by the Judices is overwhelming in this case, notwithstanding the lack of the Judices' signatures." Id. at 915-16.  As in Parich, no defendant here denies knowledge of the settlement agreement. In the instant cases, too, proof of acquiescence is overwhelming, notwithstanding that the form of the release may still be at issue.[6] Just as the Fifth Circuit stated in Parich, the Court here concludes that this "result is entirely consistent with the purpose of art. 3071, which is simply to provide objective proof of the acquiescence of the parties to the compromise agreement." Id. at 916. The writings lay out the key terms and reflect the parties'

---

[4] See Ex. 1 to this Order and Reasons.
[5] In Parich that was an Assignment; here it is the Release, drafted first by Maxum's counsel.
[6] And, just as in Parich where "[e]ven if the failure to perform in the manner agreed upon were a material breach, the Judices, we think, would likely be estopped to deny the validity of the entire compromise agreement on the basis of the legal defect in the Assignment," here the defendants should be estopped from denying the validity of the entire compromise agreement after allowing the case to be removed from the Court's trial docket and even dismissed by court order, without objection. 919 F. 2d at 918 n. 5.

consent; no party objected to the announced settlement, the cancellation of trial, or the dismissal of the case; and the defendants began working on the release contemplated by that settlement. The key deal terms are:

1. The payment amounts and methods laid out in the January 4, 2023, term sheet that no one now disputes.

2. All three lawsuits will be dismissed with prejudice.

3. Plaintiffs' counsel must obtain signed releases from all plaintiffs.

Clearly, this settlement remained subject to a critical later formality—signed release agreements. But such a formality does not preclude the finding of an enforceable settlement agreement. See Adm'rs of the Tulane Educ. Fund, 2011 WL 692045, at *4; Walk Haydel, 720 So. 2d at 374. The signed release is one of the deal terms.

But while the form of the release may still be at issue, one thing is clear:  this case has settled.  There was a meeting of the minds on the material terms of the settlement, so much so, that even were plaintiffs or their counsel to try to renege on the deal now, it would be enforceable.  This is not a case like Clampit, cited by defendants, where the salesman was not in fact authorized to quote a binding sales price and there were obvious signs to the buyer that the quoted price was not binding—most notably the form the buyers signed was titled an "Offer to Purchase." Plaintiffs' counsel's very role in this case is to serve as an agent of the plaintiffs and to make representations on their behalf.[7] And there is no basis to doubt that plaintiffs authorized their counsel to settle the case. No evidence indicates that plaintiffs did not do so. In fact, the example mandate submitted

---

[7] Indeed, Louisiana courts have held that a writing of counsel binds their clients to settlement. Chiasson v. Progressive Sec. Ins. Co., 12-532 (La. App. 5 Cir. 2/21/13), 110 So. 3d 1147, 1150; Elder v. Elder & Elder Enterprises, Ltd., 2006-0703 (La. App. 4 Cir. 1/11/07), 948 So. 2d 348, 352, writ denied, 2007-0560 (La. 5/4/07), 956 So. 2d 616; see Singleton v. Bunge Corp., 364 So. 2d 1321, 1325 (La. Ct. App. 1978) ("[B]ecause a client speaks through his attorney in court, any statement made by the attorney is held to be an admission by the client.").

by plaintiffs explicitly authorizes their counsel to settle plaintiffs' lawsuits against these defendants.[8]

Unlike in <u>Pierre v T&K Express, Inc.</u>, the case to which the court directed the parties as their negotiation of the release began to break down, plaintiffs here have not tried to repudiate the settlement. In <u>Pierre</u>, plaintiffs' counsel informed defendants counsel that he had authority from all four plaintiffs to settle their personal injury claims during the course of email negotiations and then signed a letter agreement outlining the settlement on behalf of his clients. No. CV 17-1013, 2018 WL 1413233, at *6 (E.D. La. Jan. 9, 2018), <u>report and recommendation adopted,</u> No. CV 17-1013, 2018 WL 1413042 (E.D. La. Mar. 19, 2018), <u>order clarified,</u> No. CV 17-1013, 2018 WL 5774321 (E.D. La. Nov. 2, 2018). Later the attorney claimed that one of his clients had second thoughts and had not actually agreed to settle for the offered amount, reporting that the client's initials on the letter agreement had been signed by one of the other clients. <u>Id.</u> The court held that the settlement agreement was enforceable against the client who said she had not consented because her attorney had represented her approval of the settlement writing. <u>Id.</u>  The court noted, "[a]fter a lawyer has bound a settlement in writing, parties (and/or their lawyers) cannot be permitted to change their minds at any time until the point at which the settlement check is negotiated and/or the final release documents are executed by the parties themselves." <u>Id.</u>  As was also observed in <u>Pierre</u>, where "an attorney enters into a binding settlement but the client alleges the attorney exceeded this authority, the dispute regarding authority is the subject of a separate action between the attorney and the client." <u>Id.</u>  at *5; <u>see</u> <u>Singleton v. Bunge Corp.</u>, 364 So. 2d 1321, 1325 (La. Ct. App. 1978).

Fortunately, unlike in <u>Pierre</u>, plaintiffs' counsel Jerald Block has stated in no uncertain

---

[8] Although plaintiffs have not presented all 148 signed mandates, counsel represents that they exist. And, as discussed below, the court finds the mandate is in proper form.

terms that he was authorized to, and did bind the settlement on behalf of all 148 of his clients.  He now seeks to enforce it, not renege on it.  This, too, makes it enforceable as to his clients.  Should they or Block later claim that Block did not have authority to settle, the plaintiff(s) will nonetheless be bound by Block's representation that he settled the matter, just like the plaintiffs in Pierre.

    *4.  Terms of the Settlement*

Having found an enforceable settlement, the Court now turns to the disputed terms. The first issue is whether plaintiffs' counsel's use of mandates to authorize him to sign the releases in lieu of his clients personally signing the releases complies with the parties' agreement.

As the Court has found above, the requirement of executed releases for all 148 plaintiffs is one of the key settlement terms and no funds are due by the defendants without them. Defendants claim that the mandate proposed by plaintiffs' counsel does not satisfy this key term. But the Court finds that the agreement neither authorizes nor does it preclude the use of mandates. Just as the corporate parties to this settlement will sign the settlement agreements through an agent, so too, it is possible for the plaintiffs to do so. It is clear from the writings that make up the settlement agreement that the defendants' intent in demanding 148 signed releases was to ensure that the settlement was global and that 99% of the plaintiffs could not dismiss their claims and receive 99% of the promised funds.[9] There is no indication that a release signed by an authorized agent would not satisfy the requirement. And despite defendants' challenges to the form of the mandate, the court finds it sufficiently authorizes counsel to both settle the plaintiffs' claims and to execute the necessary releases.[10]

---

[9] In Maxum's response to the mediator's proposal, it stated "There is no actual settlement and no money is transferred to Plaintiff's counsel unless and until (1) all 148 plaintiffs across all the suits execute a mutually agreed upon release. ***If any one of them backs out, the deals falls apart***." Henry, No. 20-cv-2995, ECF # 572-3 (E.D. La. May 8, 2023) (emphasis added). Similarly, in response to the term sheet, Maxum informed plaintiffs' counsel that it had expressly conveyed that "there is no settlement if any single plaintiff fails to deliver an executed release . . . ." . Henry, No. 20-cv-2995, ECF # 572-8 (E.D. La. May 8, 2023).

[10] The court speaks now only to the form of the mandate. Of course, each one must actually be signed by the

There is no special form requirement for a mandate unless the law prescribes a form for the act. La. Civ. Code art. 2993. Here, the law requires a compromise be made in writing or recited in open court. Id. art. 3072. Thus the mandate must be in writing, though it need not be notarized. The form mandate here is in writing. Further, the law of mandate requires express authority to authorize a mandate to compromise a claim. Id. art. 2993. The form mandate here explicitly appoints counsel as mandatary "for the express and limited purpose of settling my claims, executing settlement documents, and distributing settlement proceeds in the matter . . . ." Rec. Doc. 507-5. It goes on and authorizes the mandatary to "settle this matter and to execute settlement documents, including all necessary receipts, releases, and dismissals to fully conclude this matter and to dismiss all claims against [defendants]." Id.  It goes further and states that the plaintiff has "approved the proposed settlement amount and the allocation of [redacted] payable . . . as full and final resolution and completion of all of my claims . . . ." Each plaintiff who has signed this form has given express authority to attorneys Block and Matthew Hymel to both settle the claims raised in their respective lawsuit and to sign necessary releases. The form complies with all legal requirements and, to the extent all plaintiffs have signed the form mandate as plaintiffs' counsel represents, plaintiffs' counsel is authorized to execute the releases on each plaintiff's behalf. This means that plaintiffs will be in compliance with the requirement to provide 148 signed releases even if some or all of those releases are executed by plaintiffs' counsel as mandatary for the plaintiff(s).

Defendants say the form mandate is defective because it is not irrevocable. There is no such requirement and, even if the mandate is revoked, each plaintiff remains bound by it unless they notify the defendants it has been revoked. La. Civ. Code art. 3020. Defendants claim the

---

plaintiff to create a mandate.

mandate is defective because the "acceptance" line has "Block Law Firm" and not the name of the individual mandataries on it. There is no requirement that the mandate be accepted by a signed writing. Even if there was, there is no reason to believe the attorneys have not done so on the actual signed mandates. Defendants complain the release agreements are not attached to show that plaintiffs have agreed to the specific terms of the release (which has not yet been finalized). This is not a requirement either. The mandates clearly and expressly authorize counsel to settle the claims and to execute whatever release is necessary. Defendants argue also that succession requirements have not been complied with. The Court notes that there is no need for succession requirements to be complied with to find a binding settlement agreement—as discussed above, plaintiffs' counsel has already bound the plaintiffs. But the Court agrees with defendants that succession requirements may impact the viability of the mandates as to certain deceased plaintiffs and/or the authority of an heir or succession representative to execute the release. The Court does not have the information before it to address this question further.

Defendants claim to be concerned that the mandates are insufficiently binding and that they will be faced with having to litigate with a plaintiff who "backs out."  For this reason, defendants understandably required an all or nothing settlement—any settlement must include all 148 plaintiffs or there was no deal.  Block delivered that promise.  Again, to the extent any plaintiff says Block lacked the authority to bind them, that creates a cause of action between that plaintiff and Block, NOT the defendants. Moreover, as discussed in footnote 4, supra, Block has agreed to provide defense and indemnity to the defendants in the case any plaintiff seeks to revive his or her claim.

In sum, the Court finds that the plaintiffs may use the mandate, including the form that has been presented to the Court, to authorize their attorneys to sign the release on their behalf, and in

doing so for all plaintiffs (subject to any succession requirements particular to a specific plaintiff), plaintiffs will be in compliance with their obligation to provide 148 executed releases.

The Court now turns to the second issue in dispute: whether the settlement includes plaintiffs' release of all claims related to Deepwater Horizon claims even though this lawsuit only alleged malpractice with regard to plaintiffs' Subsistence Claims. The settlement here never contemplated settlement of anything other than the Gaudet, Henry, and Ackman lawsuits. Each of these lawsuits is predicated on an agreement between each plaintiff and the Defendant Law Firms by which the Defendant Law Firms agreed to handle the plaintiff's Subsistence Claim. That is explicit in each agreement. To the extent there are separate retention agreements pursuant to which the same Defendant Law Firms agreed to handle some other type of claim arising out of the Deepwater Horizon disaster for some of the plaintiffs, such claims are completely unrelated to the Subsistence Claims. At no time was including them in this settlement ever discussed orally or in writing until long after the January 4 settlement was reached. And critically, any alleged malpractice with regard to such other BP claims is entirely separate and unrelated to the alleged malpractice and breach of contract with regard to the Subsistence Claims alleged in the Gaudet, Henry, and Ackman lawsuits. Just as a plaintiff with a property damage claim against her homeowner's insurer arising out of Hurricane Zeta damage does not simultaneously settle her claim against the same insurer for damages arising out of Hurricane Ida, plaintiffs here agreed to settle their claims of alleged malpractice and breach of contract arising out of the Defendant Law Firm's handling of their Subsistence Claims ONLY.

The Court next considers the third issue:  whether the settlement includes a release of all employees of the Law Firm Defendants, even though none of them were named in this lawsuit and the claims here were for legal malpractice (for which only an attorney—not attorneys' staff—can

be liable) and breach of contract (for which only the contracting parties—not employees of the contracting parties—can be liable). The Defendant Law Firm's employees were never part of this lawsuit—which is a breach of contract and legal malpractice action. However, any claim against the employees arising out of their actions in handling the Subsistence Claims arise out of the same transaction or occurrence as the claims raised in <u>Gaudet</u>, <u>Henry</u>, and <u>Ackman</u>. As a result, the Court finds that releases of the employees were always contemplated by the global settlement of all claims in the three suits. Moreover, it is typical for a release of a corporate defendant to include a release of all its employees and agents who might be liable for the damages alleged in the lawsuit.[11] The actions of the employees and any other agents of the Defendants—to the extent related to the allegations in the three lawsuits—are contemplated by the parties' settlement and should be included in the release.

Conclusion

For the foregoing reasons, the Motion to Enforce Settlement and to Dismiss all Claims with Prejudice (Rec. Doc. 564) is GRANTED. The Court finds a valid and enforceable settlement agreement on the following terms:

1. The confidential payment amounts and methods laid out in the January 4, 2023, term sheet

2. All three lawsuits will be dismissed with prejudice.

3. Plaintiffs' counsel must obtain signed releases from all 148 plaintiffs.

The Court finds that the plaintiffs will meet their obligation to provide signed releases even if the

---

[11] The release proposed by the defendants uses standard language to define each defendant as including "its respective past, present, and future directors, officers, administrators, managers, members, shareholders, principals, owners, employees, agents, partners, representatives, attorneys, parent companies, holding companies, affiliated companies, subsidiaries, divisions, joint ventures, insurers, reinsurers, predecessors, successors, and assigns." <u>Henry</u>, No. 20-cv-2995, ECF # 572-11, at 6-8 (E.D. La. May 8, 2023).

releases are signed by their counsel, properly authorized via a signed mandate on the form presented by plaintiffs in support of their motion, subject to any particular succession requirements that may apply. The Court finds that the scope of the settlement extends only to the Law Firm Defendants' handling of the plaintiffs' Subsistence Claims; however the settlement does include release of the employees of the Law Firm Defendants.

The parties shall proceed to finalize and execute the release as they promised to do. Upon delivery of the 148 signed releases (including releases executed by an authorized mandatary), defendants shall comply with their payment obligations. The Court finds it premature to dismiss the lawsuit with prejudice at this time.

New Orleans, Louisiana, this 13th day of June, 2023.

Janis van Meerveld
United States Magistrate Judge